United States District Court

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARIA COZZI, et al.,

        Plaintiffs,

      v.

COUNTY OF MARIN, et al.,

        Defendants.

_____/

No. C 08-3633 PJH

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Defendants' motion for summary judgment as to the claims asserted by plaintiff Martha Grigsby came on for hearing before this court on February 10, 2010. Plaintiff appeared by her counsel David M. Poore, and defendants appeared by their counsel Sheila Shah Lichtblau. Having read the parties' papers and carefully considered their arguments and evidence, and the relevant legal authority, the court hereby GRANTS defendants' motion.

**INTRODUCTION**

This is a case asserting age-related discrimination in employment, filed in July 2008 by nine plaintiffs. At the time of the events alleged in the complaint, plaintiffs were employed by defendant County of Marin in the Administrative Services Division of the Marin County Probation Department ("the Department"), where they were supervised by defendants Mario Zamudio ("Zamudio"), and Gretchen Melendy ("Melendy").

Plaintiffs assert causes of action for (1) age discrimination, in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900, et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.;

United States District Court

For the Northern District of California

(2) association discrimination, in violation of FEHA, Title VII of the 1964 Civil Rights Act

("Title VII"), 42 U.S.C. § 2000e, et seq., and the ADEA; (3) retaliation, in violation of FEHA,

Title VII, and the ADEA; (4) harassment, in violation of FEHA, Title VII, and the ADEA;

(5) failure to prevent harassment and discrimination, in violation of FEHA and Title VII;

(6) violations of federal anti-discrimination statutes and the First and Fourteenth

Amendments to the United States Constitution, under 42 U.S.C. §§ 1983 and 1985; and

(7) violations of Article 1, section 7 of the California Constitution.[1]

On November 23, 2009, pursuant to stipulation, the court set the case for trial as to

the claims asserted by plaintiff Martha Grigsby ("Grigsby"), and stayed the case as to the

remaining plaintiffs pending the outcome of Grigsby's case.  Defendants now seek

summary judgment.

## BACKGROUND

Grigsby has been a full-time employee with the Marin County Probation Department

since 1996.  Since 2004, the County has granted every request that Grigsby has made for

transfer to a new position.  In 2005, she was promoted to the position of Legal Process

Specialist.  In 2006, she applied for an opening to work in the Adult Offender Work

Program, and Zamudio transferred her to that position.  In 2007, she applied for an opening

to work in the bank unit, and defendants transferred her to that position.

From approximately 2006 to 2008, Grigsby's direct supervisor was Melendy.  In

2006, Melendy verbally complimented plaintiff's work on several occasions.  In August

2006, Melendy gave plaintiff a performance evaluation with an overall rating of "meets

standards."

Nevertheless, despite the rating of "meets standards," Grigsby considered the

August 2006 evaluation to be unfavorable, because she received a notation of "needs

improvement" in one of the 20 sub-categories of the evaluation – "neatness and accuracy."

---

[1]  Two plaintiffs also allege FEHA claims of discrimination on the basis of disability or
medical condition, failure to provide reasonable accommodation, and failure to engage in the
good-faith interactive process.  Those claims are not at issue in the present motion.

United States District Court

For the Northern District of California

1   In addition, the narrative portion of the evaluation suggested that Grigsby take on a higher

2   workload volume and challenge herself rather than asking others for help.

3        When asked at her deposition whether she thought that the comments in the 2006

4   evaluation were motivated by age-related animus, Grigsby said she did not know.  She

5   simply stated that she was "shocked" by the "needs improvement" notation, as she had

6   received no prior indication that she needed improvement in any area.  However, when

7   asked about other negative treatment by Melendy, she could not point to any specific

8   instances.  When asked about negative treatment by Zamudio, Melendy's immediate

9   supervisor, Grigsby said that he did not treat her unfavorably.

10        The incident that appears to have created the impetus for the filing of this action

11   occurred at one of the regular monthly Department meetings, on March 27, 2007.  Grigsby

12   did not attend the meeting, but states that she was told about it by plaintiff Maria Cozzi,

13   who was the union shop steward and who was present at the meeting.  One of the items on

14   the agenda was an announcement that Melendy was going on vacation for five days.

15   Melendy informed the attendees that she was appointing another employee, Margaret

16   Steppler ("Steppler"), to temporarily perform the duties of supervisor for that five-day

17   period.

18        Melendy testified in her deposition that after she made the announcement about

19   Steppler, the meeting became chaotic, and the attendees loudly demanded to know why

20   Melendy was designating a young employee who was still in probationary status to serve in

21   an acting supervisor position.  According to Melendy, everyone was talking and shouting at

22   once, and she could not entirely recall exactly what she said to them.

23        Even though she did not attend the meeting, Grigsby asserts that when "plaintiffs"

24   asked Melendy why she had selected Steppler for the acting supervisor job, Melendy

25   became hostile and made discriminatory comments, stating that "defendants" wanted "fresh

26   new faces" and "fresh younger faces" in the Department; and that Zamudio "smiled at

27   plaintiffs" in a manner suggesting he was "'amused' by the entire process," and then

28   "ratified" Melendy's actions and "supported the comments regarding 'fresh faces' in the

Department." Grigsby also claims that Melendy made the comment that "no one else is suitable." Grigsby and the other plaintiffs interpreted this as a statement that they were all "unsuitable" to serve as acting supervisor.

On at least two occasions that Zamudio could recall, Melendy had appointed temporary acting supervisors during her previous absences from the Department. Melendy herself recalled three prior instances, and testified that she tried to give different employees a "turn" at the acting supervisor position. The evidence is undisputed that on at least one other occasion (and possibly more than one) where such a temporary appointment had been necessary, Melendy and Zamudio had appointed an employee who was over the age of 50 (including at least one of the present plaintiffs).

Following the meeting, Grigsby signed on to a letter on union letterhead complaining about the appointment of Steppler and about the comments that Melendy allegedly made during the meeting about "fresh faces." Grigsby also participated in the filing of two union grievances, one of which referenced retaliation for union activity, and one of which complained about the supervisory skills of Melendy and Zamudio.

Grigsby acknowledged in her deposition that after she signed the letter and the two union grievances, neither Melendy nor Zamudio took any action against her, except that Melendy was allegedly at times "curt" and "cold" toward her. She was unable to recall any other incident in which she believed Melendy treated her unfairly.

Grigsby joined several other plaintiffs who filed a charge with the EEOC on February 1, 2008, alleging age-based discrimination and harassment since January 2007.

## DISCUSSION

A.    Legal Standard

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

United States District Court

For the Northern District of California

1    A party seeking summary judgment bears the initial burden of informing the court of

2    the basis for its motion, and of identifying those portions of the pleadings and discovery

3    responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp.

4    v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof

5    at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other

6    than for the moving party.  Southern Calif. Gas. Co. v. City of Santa Ana, 336 F.3d 885,

7    888 (9th Cir. 2003).

8    On an issue where the nonmoving party will bear the burden of proof at trial, the

9    moving party can prevail merely by pointing out to the district court that there is an absence

10   of evidence to support the nonmoving party's case.  Celotex, 477 U.S. at 324-25.  If the

11   moving party meets its initial burden, the opposing party must then set forth specific facts

12   showing that there is some genuine issue for trial in order to defeat the motion.  See Fed.

13   R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

14   B.    Defendants' Motion

15   Defendants seek summary judgment as to all claims asserted by Grigsby.  At the

16   hearing, plaintiffs' counsel indicated that he was withdrawing the claims brought under the

17   California Constitution, as well as all claims brought under 42 U.S.C. §§ 1983 and 1985,

18   with the exception of the First Amendment claim.

19       1.    Age Discrimination

20   Defendants argue that summary judgment must be granted as to Grigsby's first

21   cause of action for age discrimination because she cannot establish that she suffered any

22   adverse action on account of her age.

23   Under the ADEA, it is unlawful for any employer to take an adverse action against an

24   employee "because of such individual's age." 29 U.S.C. § 623(a).  "[A] plaintiff bringing a

25   disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the

26   evidence, that age was the 'but-for' cause of the challenged adverse employment action."

27   Gross v. FBL Fin. Servs., 129 S.Ct. 2343, 2352 (2009).

28   Under FEHA, it is an unlawful employment practice for an "employer, because of the

United States District Court

For the Northern District of California

1    race, religious creed, color, national origin, ancestry, physical disability, mental disability,

2    medical condition, marital status, sex, age or sexual orientation of any person to . . .

3    discriminate against the person in compensation or in terms, conditions or privileges of

4    employment."  Cal. Gov't Code § 12940(a).

5         Discrimination can be established in either of two ways – by direct evidence, or by

6    indirect evidence.  Enlow v. Salem-Keizer Yellow Cab Co., Inc., 389 F.3d 802, 812 (9th Cir.

7    2004); Lowe v. City of Monrovia, 775 F.2d 998, 1009 (9th Cir. 1985).  Direct evidence is

8    "evidence which, if believed, proves the fact [of discriminatory animus] without inference or

9    presumption").  Godwin v. Hunt Wesson, Inc., 150 F. 3d 1217, 1221 (9th Cir. 1998).

10        If the plaintiff has no direct evidence, she may prove discrimination by using indirect,

11   or circumstantial evidence, under the three-stage burden-shifting framework laid out in

12   McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[2]  See Diaz v. Eagle Produce Ltd.

13   Partnership, 521 F.3d 1201, 1207 (9th Cir. 2008).  Under McDonnell Douglas, a plaintiff

14   must first establish a prima facie case of discrimination by showing that she belongs to a

15   protected class, that she was performing her job satisfactorily (or was qualified for a

16   position for which she applied), that she was subject to an adverse employment action, and

17   that similarly situated individuals outside the protected class were treated more favorably.

18   See, e.g. Chuang v. University. of Cal., 225 F.3d 1115, 1123 (9th Cir. 2000); see also

19   Coleman v. Quaker Oats Co., 232 F.3d 1271, 1281 (9th Cir. 2000).

20        The McDonnell Douglas test is flexible and adaptable to each case's unique facts.

21   Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 n.6 (1981).  Thus, in order

22   to establish a prima facie case of age discrimination, Grigsby must show that she was at

23   least 40 years old; was performing her job satisfactorily; suffered an adverse action; and

24   was treated less favorably than a similarly situated younger employee.  See Coleman, 232

25

26   ─────────────────

         [2]  The Supreme Court "has not definitively decided whether the evidentiary framework
27   of [McDonnell Douglas], utilized in Title VII cases, is appropriate in the ADEA context."  Gross,
     129 S.Ct. at 2349 n.2.  However, the Ninth Circuit continues to analyze ADEA claims under
28   the McDonnell Douglas standard.  See, e.g., Delos Santos v. Potter, 2010 WL 997102 at *1
     (9th Cir., March 17, 2010).

United States District Court

For the Northern District of California

1    F.3d at 1280-81.  The same analysis is applied in FEHA cases.[3]  Guz, 24 Cal. 4th at 355;

2    see also Deschene v. Pinole Point Steel Co., 76 Cal. App. 4th 33, 44 (1999).

3           If Grigsby is able to articulate a prima facie case, thereby justifying a presumption of

4    discrimination, the burden shifts to the County to articulate a legitimate, non-discriminatory

5    reason for its adverse employment action.  See Diaz, 521 F.3d at 1207.  If the County

6    satisfies its burden, Grigsby must then prove that the reason advanced by the County

7    constitutes mere pretext for unlawful discrimination.  Id.

8           The court finds that the motion must be GRANTED, as Grigsby has neither provided

9    direct evidence of discrimination, nor provided evidence sufficient to establish a prima facie

10   case under the McDonnell-Douglas analysis.

11          Grigsby argues that statements or remarks made by an employer's managers or

12   decision makers can suffice as direct evidence of discriminatory intent, and that

13   discriminatory comments, standing alone, may raise a triable issue of fact as to

14   discriminatory motive.  She contends that she has three examples of such "direct

15   evidence."  The court finds that none of these incidents provides direct evidence of age-

16   based discrimination against Grigsby.

17          First, Grigsby asserts, the Chief Probation Officer, Bill Burke, and the "upper

18   management" enacted a policy in 2006 in which the Probation Department sought to get rid

19   of older workers.  She claims that Burke openly stated at a 2006 "organizational meeting"

20   with his "managers and supervisors" that the Department was too "old" and that "we got to

21   get younger," that older workers are more resistant to "change," and that if older workers

22   cannot accept change, it is the responsibility of management to provide them with a

23   "graceful exit."

24          Grigsby did not attend the meeting herself, and presents no direct evidence of any

25   such Department policy (nor of any workers who were terminated pursuant to such policy).

26

27          [3]  California courts look to federal anti-discrimination law as an aid in interpreting
28   analogous state law provisions.  Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 354 (2000); Kelly
     v. Stamps.com Inc., 135 Cal. App. 4th 1088, 1099 (2005).

United States District Court
For the Northern District of California

1   Instead, she relies on deposition testimony from Acting Probation Supervisor Lonnie Morris

2   ("Morris").  Morris, however, simply testified as to his unsupported belief that an article

3   entitled "Lessons Learned" was distributed at a meeting – he does not identify it as the

4   2006 "organizational meeting" – and that the article provided a "blueprint" for getting older

5   workers to gracefully exit the workplace.

6         However, the excerpt from the "Lessons Learned" article, which is unauthenticated

7   but was an exhibit to the Morris deposition, does not support Morris' assertions about the

8   alleged conspiracy to get rid of workers, as it is nothing more than an unknown author's

9   opinion on how to implement change in a work environment.  Moreover, it bears a

10  publication date of 2009, three years after the 2006 "organizational meeting."

11        Second, Grigsby asserts that Melendy repeatedly made age-related derogatory

12  comments to plaintiff Joan Monteverdi, a 74-year-old clerical worker, asking her why she

13  was not "retiring," and calling her the "queen" in a "hostile and unwelcome manner.  She

14  allegedly told Monteverdi that she had to attend six counseling sessions to discuss her

15  "attitude" about retirement.  Grigsby supports these claims with a declaration from

16  Monteverdi.  However, the fact that such comments may have been directed at Monteverdi

17  does not establish that Melendy held any age-related animus toward Grigsby.

18        Third, Grigsby contends that Melendy told her after her 2006 performance evaluation

19  that the older employees "were set in their ways in our department and it would be good to

20  get younger people who were a little more progressive."  Grigsby claims (without

21  establishing first-hand knowledge) that Melendy "followed the instructions of Burke, and

22  took active measures to target the older clerical workers in the Administrative Services

23  Department."

24        It is not clear how exactly Melendy "targeted older workers," as Grigsby's arguments

25  are made in general terms.  In her "Statement of Facts," Grigsby claims that Melendy

26  changed the policy that allowed use of vacation days for medical appointments, and also

27  asserts that Melendy's appointment of Steppler to the five-day temporary supervisor

28  position was a "break with tradition."  In addition, Grigsby refers to Melendy's alleged

8

United States District Court

For the Northern District of California

1  negative comments toward "plaintiffs" at the meeting when "plaintiffs" asked her for an

2  explanation as to why she had selected Steppler for the job, and to Zamudio's support for

3  Melendy at the meeting.  However, none of these constitute direct evidence of age-based

4  discrimination against Grigsby.

5       While statements in Grigsby's opposition to defendants' motion and in her

6  declaration suggest that she was personally present at the March 27, 2007 meeting where

7  Melendy announced that she was appointing Steppler to the temporary acting supervisor

8  position, Grigsby has admitted that she was not present, and so therefore has no first-hand

9  knowledge of what happened.  Moreover, as she was not at the meeting, she could not

10  have been the object of any of the alleged comments made by Melendy or Zamudio.

11       In addition, Melendy's alleged comment about the Department wanting "fresh faces"

12  does not lead to the inescapable conclusion that Melendy wanted younger faces, in

13  particular because Steppler was a new face to the Department, regardless of her age.  Age

14  and years of service are distinct, and thus to base a decision on fewer years of service ("a

15  fresh face") is not necessarily an age-based comment.  Hazen Paper Co. v. Biggins, 507

16  U.S. 604, 611 (1993); see also Nidds v. Schindler Elevator Corp., 113 F.3d 912, 918-19

17  (9th Cir. 1996).

18       As for the comments generally, "stray remarks" – such as comments regarding older

19  workers being "resistant to change" or comments to the effect that it would be good to get

20  younger workers – are ordinarily considered insufficient to provide evidence of

21  discrimination.  See Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir. 1993) (use of

22  phrase we "don't necessarily like grey hair" did not create inference of discriminatory motive

23  where not tied to adverse employment decision); Nidds, 113 F.3d at 918-19 (use of the

24  phrase "old timers" did not support inference of discriminatory motive); Rose v. Wells Fargo

25  & Co., 902 F.2d 1417, 1420-21 (9th Cir. 1990) (use of the phrase "old-boy network" did not

26  support inference of discriminatory motive).

27       Moreover, comments such as the ones about which Grigsby complains cannot

28  provide direct evidence of discriminatory intent because they were not contemporaneous

9

United States District Court

For the Northern District of California

1   with any adverse action taken against Grigsby.  See Kennedy v. Schoenberg, Fisher &

2   Newman, Ltd., 140 F.3d 716, 723-25 (7th Cir. 1998) (in order to rise to the level of direct

3   evidence of discrimination, isolated comments must be "contemporaneous with" the

4   adverse action, or causally related to the decision making process that led to the adverse

5   action), quoted in Lam v. University of Hawai'i, 164 F.3d 1186, 1187 (9th Cir. 1998); see

6   also Trop v. Sony Pictures Entmn't, Inc., 129 Cal. App. 4th 1133, 1147-49 (2005).

7          Finally, even were the court to find that some of the comments attributed to Melendy

8   or other supervisors were sufficient to create a triable issue as to discriminatory intent,

9   Grigsby's age discrimination claims would still fail because she has not provided evidence

10  that she suffered any adverse action on account of her age (let alone any evidence that the

11  comments were contemporaneous with the adverse action).

12         Under both the ADEA and FEHA, an adverse employment action is one that

13  materially affects the terms, conditions, or privileges of the plaintiff's employment.  See

14  Chuang, 225 F.3d at 1126; Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1052-54

15  (2005).  The court finds that Grigsby has not established that any of the incidents she has

16  identified materially affected the terms, conditions, or privileges of her employment.

17         In her opposition, Grigsby lists the following as "adverse actions" – the August 2006

18  performance evaluation, the appointment of Steppler as acting supervisor in March 2007,

19  the statement at the March 2007 meeting that none of the attendees at the meeting was

20  "suitable," the "hostile work environment" allegedly created by defendants, Melendy's

21  alleged interference in union activities, and defendants' alleged cessation of supervision

22  over the employees in the Department.

23         First, Grigsby argues that the "negative" August 2006 performance evaluation was

24  an adverse employment action.  She claims that she was "shocked" at the evaluation, as

25  Melendy had previously provided her with only positive reviews.  Grigsby asserts that as a

26  result of the negative performance evaluation, she was placed on a "work improvement

27  plan," for which she was not given an "end date."  According to Grigsby, this negative

28  evaluation impacted her future promotional prospects.

United States District Court

For the Northern District of California

1    The court finds, however, that the 2006 performance review was largely positive, as

2    Grigsby's overall rating was "meets standards."  According to the defendants' undisputed

3    evidence, the "meets standards" designation qualifies a County employee for all potential

4    raises, and is recognition that an employee is doing what the standards of the job require.

5    Thus, even if the one sub-part that indicated "needs improvement" can be construed as

6    "negative," the performance evaluation as a whole does not meet the definition of a

7    negative employment action, because there is no evidence that the evaluation led to an

8    alteration in the terms and conditions of plaintiff's employment, or to any tangible form of

9    adverse action.[4]  Grigsby has pointed to no evidence of any negative outcome from the

10   small, de minimis criticism that Melendy leveled at her "neatness and accuracy."

11   Nor has Grigsby provided any evidence that the two negative comments on the

12   otherwise favorable evaluation were undeserved.  See Yartzoff, 809 F.2d at 1376 (holding

13   that an "undeserved" performance rating can, in certain circumstances, constitute an

14   adverse employment action).  Indeed, Grigsby conceded in her deposition that she had

15   made the mistakes that led to the "needs improvement" notation.  In addition, a mediocre

16   performance rating that does not give rise to any further negative employment action does

17   not constitute an adverse employment action.  Kortan v. California Youth Auth., 217 F.3d

18   1104, 1112-13 (9th Cir. 2000); see also Lyons v. England, 307 F.3d 1092, 1118 (9th Cir.

19   2002).

20   As for the alleged "work improvement plan," Grigsby's claim is contradicted by her

21   deposition testimony, where she admitted that the "work improvement plan" was in fact

22   Melendy's request by e-mail that Grigsby attend additional training at her co-workers'

23   desks, which lasted no more than a few hours.  Grigsby herself testified that the purpose of

24   this "training" was to get her up to speed on how her co-workers wanted certain tasks

25   performed.

26

27   _____

     [4] Moreover, Grigsby testified in her deposition that she did not know whether the "needs
28   improvement" notation in the 2006 evaluation was issued to her because she was an older
     worker.

**United States District Court**
For the Northern District of California

1   The second "adverse action" identified by Grigsby is the defendants' "refusal" to

2   consider her for the acting supervisor position because they wanted "fresh new faces" in

3   the Department.  Grigsby claims that "the evidence" shows that the acting supervisor

4   position was important because it served as a stepping-stone to greater advancement

5   within the Department, and that because the work improvement plan continued with no

6   "end date," she was deemed unsuitable for the acting supervisor position.

7   The appointment of Steppler as acting supervisor – no matter how it may have

8   rankled the other employees – did not constitute an adverse employment action.  The

9   appointment was not a "promotion" for Steppler, as she did not receive any increase in pay,

10   benefits, or rank.[5]  Furthermore, it was an "acting" appointment that had a total duration of

11   five days.  As such, it was a temporary appointment that did not deprive any other

12   employee of a promotion.

13   In addition, the evidence shows that Melendy had previously made temporary

14   appointments when she was going to be out of the office for short periods, and that she had

15   appointed older employees to serve in the acting supervisor position.  Moreover, there is no

16   evidence that Melendy appointed Steppler – instead of Grigsby – to the five-day acting

17   supervisor position because of Grigsby's age.  The fact that Grigsby was "shocked" to be

18   told by Melendy that she "need[ed] improvement" in her work habits is not evidence that the

19   temporary appointment of Steppler constituted an adverse employment action for Grigsby

20   or any of the other plaintiffs.

21   Grigsby has provided no evidence that Steppler was not qualified to serve as acting

22   supervisor for five days.  She simply comes to the unfounded conclusion that Steppler was

23

24   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

    [5]  Grigsby asserts that Steppler was provided with more responsibility than any acting

25   supervisor in the past, was allowed to use Melendy's office and computer, had access to the
    employment files, and received an increase in pay for acting as temporary supervisor.  The

26   "evidence" that Grigsby cites is an unauthenticated statement purportedly written by Priscilla
    McGee (another employee, not a plaintiff herein), which was an exhibit to the Zamudio

27   deposition.  Plaintiff has laid no foundation for this "evidence," however; and it is also
    inadmissible hearsay.  In addition, Zamudio testified in his deposition that notwithstanding the

28   statement attributed to Ms. McGee, Steppler was not paid more money for those five days that
    she served as acting supervisor during Melendy's absence.

United States District Court

For the Northern District of California

1   not qualified because she had not worked in the Department long enough.  Defendants

2   provide evidence showing that there is no County policy prohibiting new or probationary

3   employees from serving in the position of temporary acting supervisor, and no policy

4   mandating that temporary five-day assignments be filled only by the most senior

5   employees.

6          Most importantly, Grigsby provides no evidence showing that this five-day temporary

7   appointment had any material effect on the terms, conditions, or privileges of her own

8   employment.  Grigsby does not claim that she lost any pay or benefits, that she suffered

9   any reduction in work hours, that she was deprived of any work-related amenities or

10  privileges, or that she was transferred to another location.

11         Grigsby argues that the appointment to acting supervisor is important for career

12  development, as it gives lower-level, but experienced, clerical employees the opportunity to

13  gain management experience, leadership opportunities, and further advancement through

14  the County.  According to Grigsby, an appointment as acting supervisor would also be a

15  positive reference in any subsequent application for promotion, including an application for

16  promotion to a supervisory position with the County.  She also contends that it was

17  "obvious" that Melendy was "grooming" Steppler for "greater responsibilities" within the

18  Department.  However, she provides no evidence to support either of these assertions.  In

19  particular, she provides no evidence showing any tangible benefit acquired by any

20  employee (including Steppler) as a result of serving in the acting supervisor position.

21         The third "adverse action" identified by Grigsby is the comment that the attendees at

22  the March 27, 2007 were "not suitable" (or were "unsuitable") for the appointment as acting

23  supervisor.  However, Grigsby's claim that Melendy told her she was "unsuitable" for the

24  temporary acting supervisor position is unsupported by the record, as Grigsby admits she

25  was not at the meeting where the "not suitable" or "unsuitable" comment was allegedly

26  made.

27         The fourth adverse action identified by Grigsby is Melendy's alleged denial of "union

28  representation," refusal to allow "plaintiffs" to discuss union matters, threat to release

United States District Court

For the Northern District of California

plaintiff's "confidential and private personnel information" (evidently referring to test scores), and engaging in "daily inappropriate conduct." Plaintiff supports these claims with her own declaration and the declarations of the other plaintiffs. She also cites the Zamudio deposition, but while the cited excerpts discuss some issues relating to union representation, the excerpts do not support Grigsby's claim that Melendy denied union representation or refused to allow "plaintiffs" to discuss union matters.

In a similar vein, Grigsby contends that the "hostile work environment" created by defendants for a period of more than a year can properly be considered an adverse employment action. The court is unaware of any authority supporting a claim that a "hostile environment" can serve as the required "adverse action" in a discrimination claim. Moreover, these claims are contradicted by Grigsby's testimony that she did not perceive difficulties in working with Melendy, that Melendy was good to her in the summer of 2007, and that other than the performance evaluation, she did not think that Melendy had treated her unfavorably, except at times Melendy was "curt" and "cold" toward her.

Finally, Grigsby contends that defendants' admission that they "stopped supervising" the "plaintiffs" is also an adverse employment action. Grigsby claims that Zamudio testified in his deposition that after "plaintiffs" filed complaints of age discrimination, he and Melendy "stopped supervising" them. Grigsby claims that because "plaintiffs" did not receive any written evaluations for 2007, this lack of supervision is an adverse employment action.

The record reflects that Zamudio actually testified that Melendy eventually quit her job because the staff were not allowing her to supervise – "whatever small, insignificant or significant direction she was giving to some of her clerical staff was met with a high level of resistance and at some times very vocal and nasty" – and that she effectively quit supervising. Zamudio states that "there were multiple incidents where she was being attacked, including publicly," including in letters and statements to the Board of Supervisors, union grievances, and internal complaints of age discrimination, and that she became "intimidated and afraid and distressed every day that she came to work" and eventually decided that she could no longer work effectively.

United States District Court
For the Northern District of California

1  The court finds that the claim that defendants' reduction in their level of supervision

2  of the Administrative Unit to avoid ongoing attacks was an adverse employment action is

3  not viable, as the only result of that would have been to reduce the alleged criticism or

4  discipline by defendants.

5  In short, the court finds that Grigsby has failed to identify a single adverse action that

6  was taken against her on account of her age.  The court finds further, in accordance with

7  the foregoing analysis, that Grigsby cannot establish a prima facie case of age

8  discrimination under <u>McDonnell Douglas</u>, as she has provided no evidence that she

9  suffered an adverse action.

10  2.  Association Discrimination

11  Defendants argue that summary judgment should be granted as to Grigsby's second

12  cause of action for association discrimination because she has no viable claim of age

13  discrimination.

14  In the complaint, plaintiffs allege that defendants violated FEHA, the ADEA, and Title

15  VII when they discriminated against plaintiffs in the terms, conditions, or privileges of

16  employment on the basis that plaintiffs associated with other employees over the age of 40.

17  FEHA provides that discrimination based on one of the protected characteristics

18  includes a perception that the person has any of those characteristics or that the person is

19  associated with a person who has, or is perceived to have any of those characteristics.

20  Cal. Gov't Code § 12926(m).  Thus, FEHA expressly provides a cause of action for

21  unlawful discrimination based on an association with someone in a protected class.

22  However, it is not entirely clear what type of conduct constitutes an "association."[6]

23  In the context of the present case, defendants assert that Grigsby must establish

24  that she suffered an adverse employment action as a result of her association with people

25  over 40.  <u>See</u> <u>Setencich v. American Red Cross</u>, 2008 WL 449862 at *6-7 (N.D. Cal., Feb.

26

27  [6]  Moreover, it is not clear on what basis a plaintiff can bring an "association

28  discrimination" claim under the ADEA or Title VII.

15

United States District Court

For the Northern District of California

15, 2008).  Defendants contend that because Grigsby cannot show any adverse action or any link to discrimination based on age, her claim for association discrimination also fails.

The court finds that the motion must be GRANTED.  Grigsby has failed to provide any evidence of an adverse action or any link to discrimination based on her association with people over the age of 40.

3.    Retaliation

Defendants contend that summary judgment should be granted as to Grigsby's third cause of action for retaliation because she cannot establish a prima facie case.  They assert that she cannot show that she was the recipient of any unfavorable treatment that could amount to a negative employment action, or that she engaged in any protected activity that resulted in any adverse employment action.

The ADEA not only protects against discrimination, but also specifically protects against retaliation as well.  29 U.S.C. § 626(d).  Title VII and FEHA also prohibit retaliation. Retaliation claims under the ADEA are analyzed in the same way as Title VII retaliation claims.  Wallis v. J.R. Simplot Co., 26 F.3d 885, 888 (9th Cir. 1994) (burdens of proof and persuasion are the same under Title VII and the ADEA); see Whitman v. Mineta, 541 F.3d 929, 932 (9th Cir. 2008) (age-related retaliation claims are analyzed under McDonnell Douglas framework).

Thus, Grigsby bears the burden of establishing a prima facie case by showing that she engaged in a protected activity, that the County subjected her to an adverse employment action, and that there was a causal link between the protected activity and the employer's action.  See Bergene v. Salt River Proj. Agr. Imp. and Power Dist., 272 F.3d 1136, 1140-41 (9th Cir. 2001); see also Yanowitz, 36 Cal. 4th at 1042 (2005) (same standard under FEHA).

There is, however, a difference between Title VII and FEHA with regard to what constitutes an adverse employment action in a retaliation claim.  Under Ninth Circuit law, an adverse employment action for purposes of a Title VII retaliation claim is an action "reasonably likely to deter employees from engaging in protected activity."  Ray v.

**United States District Court**
For the Northern District of California

Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000).  Under FEHA, an adverse action for purposes of a retaliation claim is an action that "materially affects the terms, conditions, or privileges of employment, rather than simply that the employee has been subjected to an adverse action or treatment that reasonably would deter an employee from engaging in the protected activity."  Yanowitz, 36 Cal. 4th at 1051 & n. 10.

If Grigsby is successful in establishing a prima facie case, the burden shifts to the defendants to present a legitimate business rationale.  Grigsby may still prevail if she is about to establish the existence of triable issues as to whether the defendants' proffered explanation is a pretext for retaliation.  Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1066 (9th Cir. 2003).

Here, defendants note, when Grigsby was asked at her deposition whether Zamudio or Melendy took action against her for complaining about the March 27, 2007 meeting, she admitted that no action was taken against her.  The only "adverse action" she could recall was that Melendy became "curt" and "cold" toward her.  Defendants contend that cold and curt treatment is insufficient to constitute a negative employment action for a claim of retaliation.  See Manatt v. Bank of America, NA, 339 F.3d 792, 803 (9th Cir. 2003) (mere ostracism in the work place does not provide a basis for a claim of retaliation).

Defendants contend that in her responses to defendants' interrogatories, Grigsby mentioned two other incidents as evidence of retaliation.  The first was a decision by Melendy to post the test scores of employees who had taken a certain test, even though a few hours later, Melendy agreed to keep the test scores confidential.  The second was the Department's decision to no longer include the administrative employees at Adult Division Meetings.  Defendants note that Grigsby admitted in her deposition that she did not know why Melendy initially declined to keep the test scores confidential, and also testified that the decision to not include the administrative employees in Adult Division meetings applied to the entire administrative staff in that unit, including the allegedly younger employee, Margaret Steppler.

Defendants contend that these events are insufficient to constitute a negative

United States District Court
For the Northern District of California

1    employment action under the third prong of the prima facie showing required under the

2    <u>McDonnell Douglas</u> test, as they are nothing more than mild transgressions that do not

3    arise to a change in employment status.  Moreover, defendants contend, these decisions

4    were directed at all administrative employees.

5          In opposition, Grigsby claims that she has established that she was the subject of

6    retaliation after "plaintiffs" made their internal complaints of discrimination.  She asserts that

7    she has provided evidence sufficient to create a triable issue as to retaliation, including

8    evidence that defendants created a hostile work environment with the goal of getting rid of

9    older workers who were resistant to "change;" that defendants refused to investigate

10   "plaintiffs'" internal complaints of discrimination; and that defendants "stopped supervising"

11   plaintiffs in the workplace.  Grigsby asserts that these are actions that would be perceived

12   as materially adverse by a reasonable person, and that would certainly deter any employee

13   from reporting discriminatory conduct in the future.

14         The court finds that the motion must be GRANTED.  Grigsby has failed to provide

15   evidence sufficient to establish a prima facie case, as she has not shown that she was the

16   recipient of any adverse employment action that resulted from engaging in protected

17   activity.  Grigsby herself testified in her deposition that following her complaints, defendants

18   did not treat her unfavorably.

19         Notwithstanding her prior testimony, Grigsby now claims, with no support other than

20   her contradictory declaration (and the declarations of her fellow plaintiffs with identical

21   assertions) that she suffered from a "hostile work environment" and that defendants'

22   alleged "refusal" to investigate the plaintiffs' complaints constituted a negative employment

23   action.

24         The failure to conduct an adequate investigation after an alleged act of

25   discrimination is not an action that "materially affects the terms, conditions, or privileges of

26   employment" under FEHA or constitutes an adverse action or treatment that reasonably

27   would deter an employee from engaging in the protected activity under Title VII.  <u>See</u> <u>Finley</u>

28   <u>v. County of Marin</u>, 2009 WL 5062326 at *15 (N.D. Cal., Dec. 23, 2009).

United States District Court

For the Northern District of California

1    Moreover, the evidence shows that Grigsby joined with other employees in filing two

2    union grievances against defendants after she claims that defendants rejected her initial

3    complaints on April 11, 2007.  Those grievances continued into the fall of 2007.  Thus,

4    Grigsby was evidently not deterred from filing further complaints.

5    Finally, with regard to Grigsby's claim that defendants "stopped supervising" the

6    plaintiffs, and that this constituted an adverse action, Grigsby has provided no evidence

7    showing that this stopping of supervision had a detrimental effect on her or on her job –

8    particularly given that the lack of supervision presumably freed her from the alleged

9    criticism.

10                    4.        Harassment

11    Defendants argue that summary judgment should be granted as to Grigsby's fourth

12    cause of action for harassment because she cannot establish any conduct that was so

13    severe or pervasive as to alter the conditions of her employment and create an abusive

14    work environment.

15    To prevail on a hostile workplace/harassment claim, Grigsby must show that she

16    was subjected to verbal or physical conduct of a racial or sexual or age-related nature, that

17    the conduct was unwelcome, and that the conduct was sufficiently severe or pervasive to

18    alter the conditions of her employment and create an abusive work environment.  Vasquez

19    v. County of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003) (Title VII); see also Reno v.

20    Baird, 18 Cal. 4th 640, 646-47 (1998) (FEHA).

21    Defendants contend that Grigsby has no evidence establishing a severe or

22    pervasively hostile workplace, or that any conduct by any of the defendants was linked to

23    her age.  Defendants note that Grigsby testified in her deposition that Zamudio did not treat

24    her unfavorably, and also testified that she did not perceive any difficulties in working for

25    Melendy.  When asked whether Melendy had treated her unfairly, Grigsby pointed to the

26    August 2006 "meets standards" performance evaluation, and her belief that Melendy was

27    "cold" and "curt" to her and to the entire unit at times.

28    In opposition, Grigsby argues that she has provided sufficient evidence to

United States District Court
For the Northern District of California

1   demonstrate that she was subjected to a hostile work environment because of her age.

2   She asserts that she was subjected to "hostile and unwelcome comments" by Melendy in

3   which Melendy stated that "older employees were set in their ways, and it would be good to

4   hire younger people in the department," and that "it would be good to get younger people

5   who were a little more progressive."  She claims that Melendy also "refused" to consider

6   her for the Acting Supervisor position because she was "unsuitable" and because Melendy

7   wanted "fresh new faces" in the department.

8          Grigsby also claims that the "unsupported negative performance evaluation" was

9   part and parcel of this "hostile environment" and the "daily harassment" toward Grigsby and

10  her fellow plaintiffs as a "group" after they made claims of age discrimination.  Grigsby also

11  complains about the fact that Melendy and Zamudio "stopped supervising," and that

12  defendants "refused" to investigate the claims of discrimination.

13         The court finds that the motion must be GRANTED.  Grigsby has provided no

14  admissible evidence of any verbal or physical conduct of an age-related nature that was

15  sufficiently severe or pervasive to alter the conditions of her employment and create an

16  abusive work environment.

17         The "severe or pervasive" standard excludes occasional, sporadic, isolated, or trivial

18  incidents of verbal abuse.  See Etter v. Veriflo Corp., 67 Cal. App. 4th 457, modified, 68

19  Cal. App. 4th 130 (1998).  Moreover, mere "[o]stracism . . . does not amount to a hostile

20  environment."  Fisher v. San Pedro Peninsula Hospital, 214 Cal. App. 3d 590, 615 (1989);

21  see also Strother v. Southern California Permanente Med. Group, 79 F.3d 859, 869 (9th

22  Cir. 1996).

23         As for the comments allegedly made by Melendy (most of which appear to have

24  been made at the March 2007 meeting that Grigsby did not attend), none of them rise to

25  the level of comments that "alter the conditions of employment" or that "create an abusive

26  work environment."  See Manatt, 339 F.3d at 798-799 (noting that law prohibiting

27  discrimination is not a "general civility code," and citing to Vasquez, 307 F.3d at 893 as

28  "finding no hostile environment discrimination where employee was told that he 'had a

20

United States District Court

For the Northern District of California

1  typical Hispanic macho attitude,' that he should work the field because 'Hispanics do good

2  in the field' and where he was yelled at in front of others").

3      More to the point, however, Grigsby's own deposition testimony confirms that she

4  did not perceive her work environment to be pervasively severe, as she admitted she did

5  not have difficulties working with Melendy or Zamudio, and that they did not treat her

6  unfavorably (except for the allegedly negative performance evaluation in August 2006).  At

7  most, Grigsby testified, she tended to "avoid" Melendy, and when she encountered

8  Melendy, Melendy was "curt" and "cold" to her.  This is not sufficient evidence to support a

9  claim of harassment on the basis of age.  Grigsby has not provided any explanation as to

10  why her deposition testimony should be disregarded – i.e., that it was the result of

11  confusion or mistake – and the court therefore disregards her contradictory declaration.

12      5.    Failure to Prevent Discrimination and Harassment

13      Defendants argue that summary judgment must be granted as to Grigsby's fifth

14  cause of action for failure to prevent discrimination and harassment because she cannot

15  establish a viable claim of discrimination or harassment.

16      FEHA imposes an affirmative duty on employers to take all reasonable steps to

17  prevent discrimination and harassment from occurring.  Cal. Gov't Code § 12940(j)(1).

18  However, no suit may be maintained for violation of this affirmative duty if the plaintiff has

19  not actually suffered any employment discrimination or harassment.  Trujillo v. North

20  County Transit Dist., 63 Cal. App. 4th 280, 288-89 (1998).

21      The court finds that the motion must be GRANTED, as Grigsby has established no

22  viable claim of discrimination or harassment.

23      6.    First Amendment Claim

24      In the complaint, plaintiffs assert that they at some point requested the assistance of

25  the members of the Marin County Board of Supervisors in ending the allegedly

26  discriminatory conduct against the older workers.  Plaintiffs claim that as a result of this

27  action, they were subjected to repeated acts of retaliation that were designed to force them

28  out of the workplace, in violation of their rights under the First Amendment to the United

States Constitution.

A claim under 42 U.S.C. § 1983 against a government employer for First Amendment retaliation requires that an employee demonstrate that she engaged in protected speech – that is, speech that addresses "a matter of legitimate public concern," that the employer took adverse employment action, and that her speech was a substantial or motivating factor for the adverse employment action. Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003). In addition, the employee must show that her interests in commenting on the matter of public concern outweigh the County's interests in maintaining public services. Sanchez v. City of Santa Ana, 936 F.2d 1027, 1038 (9th Cir. 1990).

Defendants contend that Grigsby bases this claim on the assertion that she complained about what happened at the March 27, 2007 meeting (a meeting that she did not attend). Defendants contend that it is doubtful that protesting the appointment of Steppler to the 5-day "temporary supervisor" position could be seen as a statement involving a matter of public concern, as the act that Grigsby was complaining about occurred within her job environment and also (allegedly) pertained to her.

In addition, defendants argue, Grigsby cannot point to a negative employment action that resulted from her allegedly constitutionally protected speech. Defendants note that the courts have ruled that only non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations are actionable, and that mere inconveniences, verbal disagreements, and failures to advise of meetings do not amount to adverse employment actions. Here, defendants assert, Grigsby admits that no action was taken against her for complaining about the five-day appointment of Steppler in March 2007, except that Melendy was "curt" and "cold" toward her. Defendants contend that this is insufficient to trigger a § 1983 violation.

Grigsby concedes that "internal personnel disputes" do not ordinarily rise to the level of "public concern," but asserts that when public employees make complaints to their elected officials about misconduct in a department, such complaints become, ipso facto, a matter of public concern. Grigsby contends that she was one of a group of older workers

United States District Court

For the Northern District of California

1    who went to the County's elected officials – the Board of Supervisors – and made public

2    comments about what they perceived as discriminatory treatment in the Probation

3    Department, and the County's failure to investigate their complaints.  She asserts that she

4    has also demonstrated that those complaints were motivating factors in the pattern of

5    retaliatory conduct that allegedly followed.

6         Grigsby argues that the evidence shows that the County had a "policy" of attempting

7    to get rid of older workers who would not "change," and that Melendy and Zamudio made

8    her working conditions intolerable as a result of her complaints to the Board of Supervisors.

9    Moreover, she argues, she did suffer adverse actions at the hands of the defendants.

10   Finally, she claims that there is no evidence that her actions impacted "public services,"

11   and as a result, claims that her interests are not outweighed by the state's interest in

12   maintaining public services.

13        The court finds that the motion must be GRANTED.  First, it seems apparent from

14   Grigsby's arguments that her First Amendment claim is based on a theory that defendants

15   retaliated against her for complaining about age discrimination.  The ADEA not only

16   protects against discrimination, but also specifically protects against retaliation as well.

17   29 U.S.C. § 626(d).  A § 1983 claim based on age discrimination is prohibited, because

18   Congress intended the ADEA to provide the exclusive means of pursuing federal claims of

19   age discrimination in employment.  See Ahlmeyer v. Nevada Sys. of Higher Educ., 555

20   F.3d 1051, 1058 (9th Cir. 2009).  For this reason, the First Amendment claim is barred.

21        Moreover, Grigsby has not established that she made (or was precluded from

22   making) and statements on matters of "public interest."  Grigsby complained about

23   Melendy's decision to assign acting-supervisor's duties to Steppler for a five-day period,

24   and she also signed on to two union grievances regarding retaliation for union activity and

25   the March 27, 2007 meeting.[7]  These are plainly matters related to personnel decisions, not

26   matters of public interest.

27   _____

28        [7] Grigsby also claims that she complained to the Board of Supervisors.  However, she
     testified in her deposition that she did not complain to the Board of Supervisors.

**United States District Court**
For the Northern District of California

1    When an employee speaks on a matter of personal interest (such as a personnel

2    decision), she is not speaking as a citizen for First Amendment purposes. See Desrochers

3    v. City of San Bernardino, 572 F.3d 703, 710 (9th Cir. 2009). To address a matter of public

4    concern, the content of the speech must involve "issues about which information is needed

5    or appropriate to enable the members of society to make informed decisions about the

6    operation of their government." McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir.

7    1983) (quotation and citation omitted).

8    On the other hand, speech that deals with "individual personnel disputes and

9    grievances" and that would be of "no relevance to the public's evaluation of the

10   performance of governmental agencies" is generally not of "public concern." Desrochers,

11   572 F.3d at 710 (citing Coszalter, 320 F.3d at 973). "The same is true of speech that

12   relates to internal power struggles within the workplace, and speech which is of no interest

13   beyond the employee's bureaucratic niche. Id. (quotation and citation omitted).

14   Finally, as with the age-discrimination claim and the retaliation claim, the court notes

15   that Grigsby has provided no evidence that she suffered any adverse employment action.

16   Indeed, she testified in her deposition that she was not treated unfavorably (other than the

17   "negative" performance evaluation, which the court has already determined did not rise to

18   the level of an adverse action).[8]

19   C.    Objections to Evidence

20   Defendants have filed objections to certain evidence submitted with Grigsby's

21   opposition. Specifically, defendants object to the admission of Exhibit 18 to the Zamudio

22   deposition, Exhibit 2 to the Morris deposition, and to numerous statements in the

23   declarations of Grigsby and the other plaintiffs who submitted declarations. The court has

24   reviewed the objections, and finds that they must be SUSTAINED.

25   Plaintiff filed a request for a ruling on evidentiary objections made by her counsel

26

27   ───────────────

     [8] Defendants also argue that they are entitled to qualified immunity as to the federal
28   constitutional claims. In light of the ruling on the First Amendment claim, this part of the motion
     is moot.

1  during her deposition – specifically, objections that certain questions were vague and

2  overbroad.  The court has reviewed the deposition testimony, and finds that the objections

3  must be OVERRULED.

### CONCLUSION

5       In accordance with the foregoing, the court finds that defendants' motion for

6  summary judgment as to the claims asserted by plaintiff Martha Grigsby must be

7  GRANTED.  The June 7, 2010 trial date is VACATED.

8       The parties shall appear for a case management conference on May 13, 2010, at

9  2:00 p.m. (the date previously set for the pretrial conference) to schedule proceedings for

10  the remaining plaintiffs.  The parties shall file a joint case management conference

11  statement seven days in advance of the conference, setting forth their proposal for future

12  proceedings.  Plaintiff shall additionally address whether there is any reason for the court to

13  delay entry of judgment against her pursuant to Federal Rule of Civil Procedure 54(b).

15  **IT IS SO ORDERED.**

16  Dated:  April 16, 2010

_____
PHYLLIS J. HAMILTON
United States District Judge