1

2

3                    UNITED STATES DISTRICT COURT

4                    NORTHERN DISTRICT OF CALIFORNIA

5

6

7   MARIA COZZI, et al.,

8            Plaintiffs,                        No. C 08-3633 PJH

9       v.                                      **ORDER GRANTING DEFENDANTS'
                                                MOTION FOR SUMMARY JUDGMENT**
10  COUNTY OF MARIN, et al.,

11           Defendants.
                                    /
12

13          Defendants' motion for summary judgment as to the claims asserted by plaintiff

14  MaryBeth Pascale came on for hearing before this court on February 9, 2011.  Plaintiff

15  appeared by her counsel David M. Poore, and defendants appeared by their counsel Sheila

16  Shah Lichtblau.  Having read the parties' papers and carefully considered their arguments,

17  and good cause appearing, the court hereby GRANTS defendants' motion.

18                              **INTRODUCTION**

19          This is a case asserting age-related discrimination in employment, originally filed in

20  July 2008 by nine plaintiffs.  At the time of the events alleged in the complaint, the plaintiffs

21  were employed by defendant County of Marin, and were supervised by defendants Mario

22  Zamudio ("Zamudio") and Gretchen Melendy ("Melendy").  Since the filing of the complaint,

23  the court has granted summary judgment as to the claims asserted by plaintiff Martha

24  Grigsby ("Grigsby"), and the parties have stipulated to the dismissal of claims asserted by

25  six other plaintiffs.  Remaining in the case are plaintiffs Maria Cozzi and MaryBeth Pascale.

26          Plaintiffs assert causes of action for (1) age discrimination, in violation of the

27  California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900, et seq.,

28  and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.;

United States District Court

For the Northern District of California

(2) association discrimination, in violation of FEHA, Title VII of the 1964 Civil Rights Act

("Title VII"), 42 U.S.C. § 2000e, et seq., and the ADEA; (3) retaliation, in violation of FEHA,

Title VII, and the ADEA; (4) harassment, in violation of FEHA, Title VII, and the ADEA;

(5) failure to prevent harassment and discrimination, in violation of FEHA and Title VII;

(6) violation of federal anti-discrimination statutes and the First and Fourteenth

Amendments to the United States Constitution, under 42 U.S.C. §§ 1983 and 1985; and

(7) violations of Article 1, sec. 7 of the California Constitution.

Plaintiffs have withdrawn the constitutional claims, with the exception of the First

Amendment claim.  Now before the court is the motion for summary judgment as to the

claims asserted by MaryBeth Pascale ("Pascale").

## BACKGROUND[1]

Pascale has been employed by the County of Marin since 2001, in the

Administrative Services Division of the Marin County Probation Department ("the

Department").  In July 2003, Pascale was given a special merit pay increase.  In March

2004, she was promoted over another candidate to the position of Senior Word Processing

Operator.  She has received every promotion she has applied for, and every scheduled pay

increase, and her requests for training have always been granted.  She has never received

a written negative performance evaluation during her tenure with the Department.  Her

written performance evaluations have always reflected a rating of "meets" or "exceeds"

standards.

Melendy was promoted to supervisor in 2006.  Melendy and Pascale were on

friendly terms the first few months after Melendy's promotion.  However, their relationship

began to sour in June 2006 when Pascale went to Melendy's office to complain about one

of her co-workers, Beverly Hodges ("Hodges").  Pascale asked Melendy to transfer Hodges

_____

[1]  A number of the facts in this section are taken from Pascale's deposition testimony.
In opposition to defendants' motion, Pascale submitted a declaration that contradicts some of
the prior testimony.  The general rule in the Ninth Circuit is that a party cannot create an issue
of fact by submitting an affidavit that contradicts her prior deposition testimony.  See, e.g.,
Hambleton Bros. Lumber Co. v. Balkin Enters., Inc., 397 F.3d 1217, 1225 (9th Cir. 2005); Sea-
Land Serv., Inc. v. Lozen Int'l. LLC, 285 F.3d 808, 820 n.11 (9th Cir. 2002).

United States District Court

For the Northern District of California

1    out of the unit because Hodges' work productivity was low.  Pascale testified in her

2    deposition that she also considered that Hodges had "negative energy."  Pascale felt there

3    was "a lot of adversity" in their work relationship and that her job was becoming "difficult

4    because of the personal tension in the environment."

5        Pascale testified that because she believed there was "no basis for the negative

6    energy," she told Melendy that she considered Hodges to be a "troublemaker."  According

7    to Pascale, when she called Hodges a "troublemaker," Melendy responded by slapping her

8    hands on the desk, jumping up from her chair, opening the door, and telling Pascale she

9    would not have "that kind of talk" in her office.  Melendy then waited for Pascale to leave,

10    and slammed the door behind her.

11        A few weeks later, in late June 2006, a group of employees decided to meet at 10:30

12    a.m. to eat a pie that one of them had baked.  Pascale, who had a previously scheduled

13    10:30 meeting with Melendy, went instead to the gathering to eat pie.  Pascale testified that

14    "[w]e chose to have a piece of pie at 10:30 exactly, and to not be in her office exactly at

15    10:30."  After the pie break, Pascale returned to her desk instead of going to the meeting.

16    She found three e-mails from Melendy about the missed meeting and the need to

17    reschedule.

18        These e-mails made Pascale upset.  Pascale marched into Melendy's office and

19    stated in a loud voice, "I cannot believe that you sent these e-mails about the pie."  Pascale

20    testified that she began to argue with Melendy and told Melendy that "she needed to get

21    over herself."  Pascale also told Melendy that she would not go to her in the future, even

22    though Melendy was her supervisor.

23        Following this heated exchange, Melendy issued Pascale a written warning

24    regarding her insubordination.  Pascale wrote a rebuttal to the written warning.  However,

25    she also conceded the truth of many of the statements in the warning, including the fact

26    that she had been insubordinate.  Later, in her deposition, she admitted that she had been

27    insubordinate, that she had expressed her displeasure at the e-mails in a loud voice, and

28    that she had told Melendy she would not come to her in the future.  The written warning

United States District Court

For the Northern District of California

1    was never placed in Pascale's personnel file.

2        In November and December 2006, Pascale was absent and tardy on a number of

3    occasions.  Melendy gave Pascale the option to come in at 9:30 a.m., but as Pascale

4    admitted in her deposition, she still arrived late.  Pascale had verbal discussions with

5    Melendy regarding tardiness.  During a six-week period in November and December 2006,

6    Pascale was late five times and absent four times.  In late December 2006, Melendy issued

7    Pascale a work plan regarding her excessive absenteeism and tardiness.

8        The work plan provided that Pascale would relinquish her RDO (regular days off)

9    days effective immediately; that her work hours would be from 9:30 to 5:00 with a half-hour

10   lunch; that she must adhere to the prescribed policy for calling in sick (all absences to be

11   approved four hours prior to the start of the shift); that she must be on time for her shift;

12   that if she was going to be late, she must call in within fifteen minutes of the start of her

13   shift; and that she would not be permitted to take vacation unless it had been requested

14   and approved in advance of the desired leave date.  The work plan was to remain in effect

15   for six months, at which time the restrictions would be lifted if Pascale's use of leave had

16   improved to a satisfactory level.

17       Pascale did not contest the part of the work plan related to her tardiness, but

18   considered the work plan unfair because it characterized her sick days as "unauthorized"

19   and required her to bring in a doctor's note for illnesses and to call in four hours before any

20   absence, and also because it contained a warning that failure to follow the work plan would

21   make her "subject to further disciplinary action, up to and including termination of [her]

22   employment with the County of Marin."

23       In early 2007, Pascale filed a union grievance against Melendy related to the work

24   plan.  Through union representation, the grievance was resolved to Pascale's satisfaction.

25   Melendy agreed to shorten the work plan from six months to three months and to not

26   require a doctor's note for absence due to illness, and agreed that Pascale would not need

27   to call in prior to being sick, or fifteen minutes prior to her start time if she was late.

28   Melendy also agreed to reinstate Pascale's RDO (regular days off) schedule after three

4

United States District Court

For the Northern District of California

1   months.  The work plan was not placed in Pascale's personnel file.  Pascale was taken off

2   the work plan after three months.

3       Pascale claims that Melendy took action against her for filing the grievance about

4   the work plan by directing her to type a manual for the Adult Unit of the Probation

5   Department.  Typing the manual was a task that was properly directed to the three-person

6   word processing unit where Pascale worked, but she complained that Melendy had

7   originally indicated that the job would be divided up between Pascale and her co-worker,

8   Marina Cassimus.

9       Pascale conceded that Melendy praised her for typing the manual, and asked upper

10  management to give her special recognition for doing this task.  Pascale also admitted that

11  while Ms. Cassimus worked "crazy" hours to assist Pascale with her regular workload

12  during that time period, Pascale did not have to work any overtime as a result of having to

13  type the manual.  Although Pascale was originally asked to type two manuals, she actually

14  typed one manual.  The manual consisted of approximately 44 pages.

15      Also in early 2007, Melendy issued a memorandum to all administrative employees

16  in the unit, indicating that they could not use their vacation to cover sick time.  Pascale

17  initiated another union grievance on behalf of the staff, contesting this policy on the basis

18  that there was an established practice within the unit which allowed them to use vacation to

19  cover sick time.  The grievance was resolved when Melendy agreed to retract her

20  memorandum.

21      The event that appears to have served as the impetus for the plaintiffs' claims of age

22  discrimination occurred at a meeting on March 27, 2007.  At that meeting, Melendy

23  announced that she was appointing Margaret Steppler ("Steppler"), who was allegedly

24  younger than the plaintiffs in this action, to temporarily perform the duties of supervisor for

25  five days while Melendy was off work.

26      In the present complaint, plaintiffs allege that Melendy made discriminatory

27  comments at the March 27, 2007 meeting, stating that she wanted "fresh new faces" and

28  "fresh younger faces" in the Department; and that Zamudio (Melendy's immediate

United States District Court
For the Northern District of California

1   supervisor) "smiled at plaintiffs" in a manner suggesting he was "'amused' by the entire

2   process," and then "ratified" Melendy's actions and "supported the comments regarding

3   'fresh faces' in the Department."

4        However, Pascale testified in her deposition that when she questioned Melendy at

5   the meeting as to why she had chosen Steppler, instead of others who had been with the

6   Department longer and who had previously filled in as acting supervisor, Melendy

7   responded that she wanted "fresh" faces.  Pascale admits that Melendy never stated she

8   wanted "younger" faces.  At the meeting, Pascale asked Zamudio whether he agreed with

9   Melendy.  Zamudio responded that he stood by Melendy.

10       It is undisputed that the five-day temporary assignment did not result in any

11  additional pay or benefits for Steppler and that it was not a promotion.  It is also undisputed

12  that on previous occasions, Melendy and Zamudio had appointed employees over the age

13  of 50, including two other employees who joined as plaintiffs in this action – Monica

14  Patenaude and Margaret Turner – to perform the duties of temporary supervisor.

15       Pascale also claims that when she asked Melendy why no one else could perform

16  these duties, Melendy stated that no one else was "suitable."  According to her deposition

17  testimony, however, Pascale did not believe she herself should have been appointed

18  instead of Steppler for the five-day assignment.  Pascale admitted that she lacked the

19  "CLETS"[2] experience necessary to fill in as acting supervisor, and that she could not say

20  she was more qualified than Steppler to assume the duties of acting supervisor.  She

21  simply thought that Melendy should have chosen someone other than Steppler, someone

22  who had more experience.

23       Almost immediately following the meeting, Pascale complained about the five-day

24  appointment of Steppler by filing union grievances.  She (along with the other plaintiffs) also

25  filed an internal complaint of discrimination against Melendy and Zamudio, with Chief

26

27       [2]  The California Law Enforcement Telecommunication System, or "CLETS," is a data
28  interchange switcher for state data files, which provides law enforcement and criminal justice
    agencies with access to various data bases.

6

United States District Court

For the Northern District of California

Probation Officer, William Burke.  Plaintiffs allege that Mr. Burke refused to forward the internal complaint to the County's EEO Office.  Pascale claims that Mr. Burke then accused the plaintiffs of bad faith because they refused to meet with a "facilitator" unless they had union representation.

Pascale continued to pursue the union grievances throughout the summer of 2007. The parties ultimately resolved the grievances in the fall of 2007.  As part of the settlement, defendants agreed not to issue any performance evaluations to Pascale and others.

At some point thereafter, some of the plaintiffs went to the Marin County Board of Supervisors, to request the Supervisors' assistance in ending the allegedly discriminatory conduct against older workers.  Plaintiffs assert that as a result of this action, they were subjected to repeated acts of retaliation that were designed to force them out of the workplace.  Nevertheless, Pascale testified that she did not perceive any difference in the way she was treated after she filed her internal complaint of discrimination, stating that she felt that Melendy was equally horrible both before and after the time she supervised her.

When asked at her deposition for specifics, Pascale could name only two incidents of allegedly "retaliatory" behavior.  The first incident involved a comment Melendy made to the effect that every time she walked by Pascale's work area, it appeared that Pascale would change her computer screen.  The second involved an e-mail Melendy sent to Pascale asking her to stop socializing with another co-worker who needed to work. Pascale also claimed in her interrogatory responses that as part of the retaliatory conduct, Melendy improperly gave her a workers' compensation form.  In her deposition, however, Pascale conceded that it was acceptable for Melendy to have offered the form.

Pascale also asserts in vague and general terms that Melendy was rude, hostile, and demanding, and used a "negative communication" style with her on a daily basis, but was friendly and jovial to three allegedly younger workers.  Regarding Zamudio, Pascale considers him individually liable because, as Melendy's supervisor, he generally supported Melendy's actions.  However, Pascale did not identify any instances of unfavorable treatment on Zamudio's part other than Zamudio's statement during the March 27, 2007

United States District Court

For the Northern District of California

1    meeting that he supported Melendy.

2         In her deposition, Melendy testified that she often felt barraged by attacks from

3    Pascale, and asserted that Pascale frequently challenged her actions, in particular at the

4    March 2007 meeting.  Zamudio testified that he and Melendy were forced to take a

5    "hands-off" approach because any attempt to supervise was met with vocal, nasty

6    resistance from many of the staff.

7                                        **DISCUSSION**

8    A.    Legal Standard

9         Summary judgment is appropriate when there is no genuine dispute as to any

10   material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

11   P. 56(a).  A party seeking summary judgment bears the initial burden of informing the court

12   of the basis for its motion, and of identifying those portions of the pleadings and discovery

13   responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp.

14   v. Catrett, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome

15   of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a

16   material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a

17   verdict for the nonmoving party.  Id.

18        Where the moving party will have the burden of proof at trial, it must affirmatively

19   demonstrate that no reasonable trier of fact could find other than for the moving party.

20   Soremekun v.Thrifty Payless, Inc., 509 F.3d 978, 994 (9th Cir. 2007).  On an issue where

21   the nonmoving party will bear the burden of proof at trial, the moving party can prevail

22   merely by pointing out to the district court that there is an absence of evidence to support

23   the nonmoving party's case.  Celotex, 477 U.S. at 324-25.  If the moving party meets its

24   initial burden, the opposing party must then set out specific facts showing a genuine issue

25   for trial in order to defeat the motion.  Anderson, 477 U.S. at 250; see also Fed. R. Civ. P.

26   56(c), (e).

27        When deciding a summary judgment motion, a court must view the evidence in the

28   light most favorable to the nonmoving party and draw all justifiable inferences in its favor.

                                              8

United States District Court

For the Northern District of California

1  Anderson, 477 U.S. at 255; Hunt v. City of Los Angeles, __ F.3d __, 2011 WL 982475 at *4

2  (9th Cir., Mar. 22, 2011).

3  B.      Defendants' Motion

4          1.      Age Discrimination

5          Defendants argue that summary judgment must be granted as to Pascale's claim for

6  age discrimination because she has no direct evidence of discrimination; and because she

7  cannot establish discrimination by indirect evidence as she cannot show that she suffered

8  any adverse action on account of her age.

9          Under the ADEA, it is unlawful for any employer to take an adverse action against an

10 employee "because of such individual's age." 29 U.S.C. § 623(a).  "[A] plaintiff bringing a

11 disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the

12 evidence, that age was the 'but-for' cause of the challenged adverse employment action."

13 Gross v. FBL Fin. Servs. Inc., 129 S.Ct. 2343, 2352 (2009).  Under FEHA, it is an unlawful

14 employment practice for an employer, because of the  "age . . . of any person to . . .

15 discriminate against the person in compensation or in terms, conditions or privileges of

16 employment."  Cal. Gov't Code § 12940(a).

17         In general, discrimination can be established in either of two ways – by direct

18 evidence, or by indirect evidence.  Enlow v. Salem-Keizer Yellow Cab Co., Inc., 389 F.3d

19 802, 812 (9th Cir. 2004); Lowe v. City of Monrovia, 775 F.2d 998, 1009 (9th Cir. 1985).  If a

20 plaintiff has no direct evidence, she may prove discrimination by using indirect, or

21 circumstantial evidence, under the three-stage burden-shifting framework laid out in

22 McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[3]  See Diaz v. Eagle Produce Ltd.

23 Partnership, 521 F.3d 1201, 1207 (9th Cir. 2008); Reid v. Google, 50 Cal. 4th 512, 520 n.2

24

_____

25         [3]  The Supreme Court "has not definitively decided whether the evidentiary framework
26 of [McDonnell Douglas], utilized in Title VII cases, is appropriate in the ADEA context."  Gross,
   129 S.Ct. at 2349 n.2.  However, the Ninth Circuit continues to analyze ADEA claims under
27 the McDonnell Douglas standard.  See, e.g., Russell v. Mountain Park Health Ctr. Props., LLC,
   403 Fed. Appx. 195, 2010 WL 4463138 at *1 (9th Cir., Nov. 8, 2010); E.E.O.C. v. Banner
28 Health, 402 Fed. Appx. 289, 2010 WL 4324409 at *1 (9th Cir., Nov. 2, 2010); Delos Santos v.
   Potter, 371 Fed. Appx. 746, 2010 WL 997102 at *1 (9th Cir., March 17, 2010).

(2010).  Under <u>McDonnell Douglas</u>, a plaintiff must first establish a prima facie case of discrimination by showing that she belongs to a protected class, that she was performing her job satisfactorily (or was qualified for a position for which she applied), that she was subject to an adverse employment action, and that similarly situated individuals outside the protected class were treated more favorably.  <u>See</u>, <u>e.g.</u> <u>Chuang v. University. of Cal. Davis, Bd. of Trustees</u>, 225 F.3d 1115, 1123 (9th Cir. 2000); <u>see also</u> <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1281 (9th Cir. 2000).

The <u>McDonnell Douglas</u> test is flexible and adaptable to each case's unique facts. <u>Texas Dep't of Cmty Affairs v. Burdine</u>, 450 U.S. 248, 253 n.6 (1981).  Thus, in order to establish a prima facie case of age discrimination, Pascale must show that she was at least 40 years old; was performing her job satisfactorily; suffered an adverse action; and was treated less favorably than a similarly situated younger employee.  <u>See</u> <u>Coleman</u>, 232 F.3d at 1280-81.  The same analysis is applied in FEHA cases.  <u>Guz v. Bechtel Nat'l, Inc.</u>, 24 Cal. 4th 317, 355 (2000); <u>see also</u> <u>Deschene v. Pinole Point Steel Co.</u>, 76 Cal. App. 4th 33, 44 (1999).[4]

If Pascale is able to articulate a prima facie case, thereby justifying a presumption of discrimination, the burden shifts to the County to articulate a legitimate, non-discriminatory reason for its adverse employment action.  <u>See</u> <u>Diaz</u>, 521 F.3d at 1207.  If the County satisfies its burden, Pascale must then prove that the reason advanced by the County constitutes mere pretext for unlawful discrimination.  <u>Id.</u>

The court finds that the motion must be GRANTED, as Pascale has neither provided direct evidence of age discrimination, nor provided evidence sufficient to establish a prima facie case under the <u>McDonnell Douglas</u> analysis.

Pascale contends that she has both direct and indirect evidence of discrimination on the basis of age.  Direct evidence is "evidence, which, if believed, proves the fact of

---

[4]   California courts look to federal anti-discrimination law as an aid in interpreting analogous state law provisions.  <u>Guz</u>, 24 Cal. 4th at  354; <u>Kelly v. Stamps.com Inc.</u>, 135 Cal. App. 4th 1088, 1099 (2005).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    discriminatory animus without inference or presumption" and "typically consists of clearly

2    sexist, racist, or similarly discriminatory statements or actions by the employer."

3    Dominguez-Curry v. Nevada Transp. Dep't, 424 F.3d 1027, 1038 (9th Cir. 2005)

4    (quotations, citations, and internal brackets omitted); see also Godwin, 150 F.3d at 1221.

5           Pascale asserts that Melendy engaged in "direct discriminatory remarks" on at least

6    three occasions – when Melendy informed Grigsby after Grigsby's 2006 performance

7    evaluation that "older employees are set in their ways, and it would be good to have

8    younger people in the department," and that younger people are "more progressive;" when

9    Melendy openly disciplined Joan Monteverdi (a 74-year-old clerical employee) in March

10   2006, by imposing six counseling sessions because Monteverdi would not retire; and when

11   Melendy made comments about wanting "fresh faces" in the department when Pascale

12   asked why Melendy had appointed Steppler.

13          The court previously found in the April 16, 2010 order granting the defendants'

14   motion for summary judgmenet as to Grigsby's claims ("Grigsby order") that there was

15   insufficient direct evidence of discrimination, based on the same facts alleged here.

16   Specifically, the court found that comments regarding "fresh faces" and "fresh new faces"

17   did not constitute direct evidence of discrimination because such remarks do not lead to the

18   inescapable conclusion that Melendy wanted "younger" faces or that she favored younger

19   employees.

20          Pascale concedes that "fresh faces" can mean different things, but argues that the

21   phrase must be considered "in context," and argues that it is not appropriate for a district

22   court to "spin such evidence in an employer's favor" on summary judgment.  In support of

23   her argument, she cites Chuang.  In that case, a discrimination action brought by two

24   Asian-American university employees, the court found direct evidence of discriminatory

25   motive in a  statement by a member of defendant University Board of Trustees that "two

26   Chinks" in the pharmacology department was "more than enough," which was

27   accompanied by a "laughing response" by a University dean; and in the statement made by

28   the chairman of the pharmacology department that the plaintiffs should "pray to [their]

United States District Court

For the Northern District of California

1    Buddha for help."  Id., 225 F.3d at 1128-29.

2         According to Pascale, while "fresh faces" may have different meanings, when

3    coupled with the "context of the statement," along with "previous discriminatory statements

4    made by Melendy back in 2006" (apparently referring to the comments Melendy is alleged

5    to have made to Grigsby and Monteverdi) and her "obvious favoritism" toward the younger

6    clerical employees, "it becomes readily apparent that Melendy wanted to get rid of the older

7    workers, while bringing in 'younger people' who are 'a littler more progressive.'"  Pascale

8    claims that at a minimum, a reasonable jury could conclude that this term ("fresh faces")

9    constitutes direct evidence of a discriminatory intent.

10        Nevertheless, Pascale has provided no evidence suggesting that Melendy or anyone

11   referred to wanting "younger" employees.  Pascale admitted at her deposition that she did

12   not hear Melendy ever say she wanted "younger" faces – although she claimed that maybe

13   another employee heard the word "young."  However, all but one of the declarations

14   Pascale submitted with her opposition (from co-workers Hodges, Hsu, Monteverdi,

15   Patenaude, and Turner) reference "fresh faces" not "young faces."  And, as the court noted

16   in the Grigsby order, even if Melendy did use the word "young," such a stray remark is not

17   sufficient to provide evidence of discrimination.

18        Even drawing all inferences in Pascale's favor, the court finds (as noted in the

19   Grigsby order) that the comment about wanting "fresh faces" does not lead to the

20   inescapable conclusion that Melendy wanted younger faces, particularly given the

21   undisputed fact that Steppler was a more recently-hired employee (and thus a relatively

22   "fresh" face), regardless of her age.  Age and years of service are distinct, and to base a

23   decision on fewer years spent in the Department ("a fresh face") is not necessarily an age-

24   based comment.  Hazen Paper Co. v. Biggins, 507 U.S. 604, 611 (1993); see also Nidds v.

25   Schindler Elevator Corp., 113 F.3d 912, 918-19 (9th Cir. 1996).

26        Moreover, comments such as the ones allegedly made to Grigsby and Monteverdi,

27   and the comments about "fresh faces" are insufficient to provide direct evidence of

28   discrimination against Pascale because they were not directed at her, or because, at most,

United States District Court

For the Northern District of California

they can be considered "stray remarks" that are not sufficient to provide evidence of discrimination.  See Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir. 1993) (use of phrase "we don't necessarily like grey hair" did not create inference of discriminatory motive where not tied to adverse employment decision); Nidds, 113 F.3d at 918-19 (use of phrase "old timers" did not support inference of discriminatory motive); Rose v. Wells Fargo & Co., 902 F.2d 1417, 1420-21 (9th Cir. 1990) (use of phrase "old-boy network" did not support inference of discriminatory motive).

The remark Melendy made to Grigsgy that "older people are set in their ways and it would be good to get younger people who were a little more progressive" is not admissible evidence because the court previously sustained objections to Grigsby's declaration indicating when this remark was made, as it contradicted Grigsby's deposition testimony. Moreover, there is no evidence the remark was directed at Pascale.  Similarly, the comments allegedly made to Joan Monteverdi in March 2006 regarding Monteverdi's "retirement" do not (as the court noted in the prior order) establish that Melendy held any age-related animus toward Pascale.

While it is true that "very little direct evidence of the employer's discriminatory intent [is needed] to move past summary judgment," and that "a single discriminatory comment by a plaintiff's supervisor or decisionmaker is sufficient to preclude summary judgment for the employer," Chuang, 225 F.3d at 1128, it takes more than vague statements such as the ones cited by Pascale.  More importantly, unlike the situation in Chuang, Pascale has provided no evidence tying the alleged discriminatory comments to any adverse action. Where a comment is not directly tied to an adverse action, it cannot be considered direct evidence of discrimination.  See Nidds, 113 F.3d at 919.

Thus, even were the court to find that the comments attributed to Melendy were sufficient to create a triable issue as to discriminatory intent, Pascale's age discrimination claim would still fail because, as explained below, she has not provided evidence that she suffered any adverse action on account of her age, let alone that the comments were contemporaneous with any adverse action taken against her.  See Kennedy v.

United States District Court

For the Northern District of California

1  Schoenberg, Fisher & Newman, Ltd., 140 F.3d 716, 723-25 (7th Cir. 1998) (in order to rise

2  to level of direct evidence of discrimination, isolated comments must be "contemporaneous

3  with" the adverse action, or causally related to the decision making process that led to the

4  adverse action), quoted in Lim v. University of Hawai'i, 164 F.3d 1186, 1187 (9th Cir.

5  (1998); Trop v. Sony Pictures Entmn't, Inc., 129 Cal. App. 4th 1133, 1147-49 (2005)

6  (same); see also Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1180 (9th Cir. 1998)

7  (to establish discrimination, plaintiff must show sufficient nexus between alleged

8  discriminatory remarks and adverse employment decision).

9          The court finds further that Pascale has not provided evidence sufficient to create a

10  triable issue under the McDonnell-Douglas shifting burdens analysis.  There is no dispute

11  that she is a member of the protected class.  Except for the incidents of insubordination and

12  absence/tardiness, there appears to be no question that she has performed her job in a

13  satisfactory manner.  She was considered an excellent employee until 2006, and has

14  consistently received ratings of "meets" or "exceeds" standards in her performance

15  evaluations.  She received a merit increase, and was promoted to the Senior position, with

16  supervisory duties.  She also continued to work for the County throughout 2007 and 2008

17  without any negative performance evaluation, and continues to work there today.

18          In her opposition to defendants' motion, Pascale asserts that she was the recipient

19  of numerous adverse employment actions.  She asserts that she (a) was excluded from

20  Adult Division meetings after she filed an internal complaint of discrimination with the

21  County's EEO office; (b) was provided with an improvement plan, with the next step being

22  termination; (c) was given a written warning for having made statements she claims she did

23  not make; (d) was stripped of her ability to use her paid vacation time in lieu of sick leave;

24  (e) had her regular day off taken away from her; (f) had her flexible schedule removed; (g)

25  had her workday altered, with the result that she was required to work an additional 30

26  minutes per day without overtime; (h) had her workload increased with the typing of Adult

27  and Juvenile manuals, without any of the promised support; (i) was referred to as

28  "unsuitable" for any promotional opportunities when Steppler was appointed acting

**United States District Court**
For the Northern District of California

supervisor; (j) had her union representation rights "violated;" (k) was instructed to attend interviews with County attorneys during the grievance process without her union representative being present; (l) was denied the right to have her internal complaint of age discrimination investigated; and (m) was the recipient of "months and months of workplace harassment which altered the terms and conditions" of her employment by creating a hostile work environment.

Under both the ADEA and FEHA, an adverse employment action for purposes of a discrimination claim is one that materially affects the terms, conditions, or privileges of the plaintiff's employment. See Chuang, 225 F.3d at 1126; Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1052-54 (2005).  Pascale has not established that any negative employment action was ever taken against her, other than the actions that were taken as a  result of her insubordination or absence/tardiness.  She provides no evidence showing that the County caused her to suffer "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).  Nor has she shown that the alleged adverse actions materially affected her "terms, conditions, or privileges of employment." Yanowitz, 36 Cal. 4th at 1054-55.

Neither the June 2006 written warning nor the December 2006 work plan meets the definition of negative employment action because neither incident resulted in a significant change in employment status.  Pascale appears to have conceded that the warning letter was justified and does not arise to the level of an adverse action.  With regard to the work plan, she has not established that it materially affected the terms and conditions of her employment.  Written warnings and performance improvement plans are not adverse actions where they do not materially affect the terms and conditions of employment. See, e.g., Kortan v. California Youth Auth., 217 F.3d 1104, 1113 (9th Cir. 2000); see also Grimmett v. Knife River Corp.-Northwest, 2011 WL 841149 at 9-10 (D. Or., Mar. 8, 2011).

Pascale insists, however, that the work plan did affect the terms, conditions, and privileges of employment, because it took away her paid sick time, and "rendered it

United States District Court
For the Northern District of California

1  unauthorized after the fact, when the paid sick leave is part of [p]laintiff's compensation

2  package."  However, there is no evidence to support her claim that the work plan "took

3  away" her sick leave.  As shown by Pascale's deposition testimony, the fact is that she

4  simply disputed Melendy's characterization of the sick time as being "unauthorized."

5       Pascale argues further that the work plan also eliminated her RDO (regular day off),

6  altered her work schedule,[5] and "required" that she "live in constant fear of termination, for

7  any little reason, for a period of three months in the workplace when Melendy was

8  obviously looking for any reason to eliminate older workers."

9       Pascale's claim that the work plan resulted in her losing her RDO is contradicted by

10 her deposition testimony, where she admitted that prior to the work plan, she was not

11 working sufficient hours to qualify to take the regular day off.  She acknowledged that there

12 was no provision for the RDO in the bargaining contract, and that it was simply a privilege

13 that the Probation Department granted to employees for working more than 75 hours in a

14 two-week pay period; and conceded that because she was coming in late, she was not

15 working sufficient hours to qualify for the RDO.

16      Similarly, Pascale's claim that the work plan took away her "flexible work schedule"

17 is also contradicted by her deposition testimony, where she stated that prior to the work

18 plan, she agreed to arrive at work no later than 9:30 a.m.  She speculates in her opposition

19 that defendants "altered" her work schedule and required her to work an additional 30

20 minutes without overtime, but she presents no evidence that she ever worked an additional

21 30 minutes, or failed to receive overtime for such hypothetical work.  She testified that

22 when she pointed out that she did not work that schedule, Melendy said "Okay" (although

23 Pascale also claimed that Melendy's tone of voice or manner when she said "Okay" was

24 "very abrupt and abrasive").

25      Pascale claims that she was told that the work plan would be placed in her

26 _____

27      [5] The work plan stated that Pascale's work hours would be 9:30 a.m. to 6:00 p.m., with
28 30 minutes off for lunch.  This appears to be an 8-hour work day, although Pascale refers to
   it as an 8 1/2-hour work day.  Nevertheless, there is no evidence that she had to work
   "overtime" without compensation.

United States District Court

For the Northern District of California

1   personal file.  However, the evidence shows that the warning and the work plan were

2   never placed in Pascale's personnel file, and that they did not result in demotion, denial of

3   promotion, significant alteration of job responsibilities, loss of pay, or a negative

4   performance evaluation.  Pascale cites no evidence to support her assertion that she was

5   told the work plan would be placed in her personnel file, and in fact, testified in her

6   deposition that she could not recall ever hearing that it would be placed in her file.

7       In addition, Pascale testified in her deposition that after Melendy presented her with

8   the work plan, she complained to Zamudio; and that she was satisfied with his resolution of

9   the matter (other than the fact that his usual response to complaints about Melendy's

10  manner of supervising was to say, "That's her style.").  She also brought an informal

11  grievance through her union, and the work plan was subsequently modified to her

12  satisfaction.  Her deposition testimony does not support her claim that the work plan was

13  an adverse action.

14      Melendy's memorandum regarding the change in the policy regarding use of

15  vacation time for sick leave cannot be considered an adverse action directed towards

16  Pascale, as it was issued to everyone, presumably including the younger employees in the

17  unit.  Pascale asserts, however, that while the policy set forth in the memorandum might

18  appear to have been facially neutral, the evidence shows that it was enacted to prevent her

19  personally from using her paid vacation for sick leave that was rapidly running out.

20      However, she has provided no competent evidence to support this claim.  She

21  asserts that Zamudio admitted in his deposition that she needed the benefits of the old

22  policy because "she had run out of her sick time and was attempting to use vacation time."

23  This evidence is not sufficient to create a triable issue, however, particularly in view of the

24  fact that the policy was rescinded shortly after it was announced.

25      Melendy's request that Pascale type a manual does not rise to the level of an

26  adverse action, in particular because Pascale worked in the word processing unit where

27  her job was to type documents.  In addition, typing the manual was a relatively short

28  assignment, and there is no evidence that the assignment resulted in Pascale having to

17

United States District Court

For the Northern District of California

1   work any overtime hours.  She has provided no evidence to support her claim that the

2   assignment to type the Adult manual was an adverse action because she could not finish

3   the assignment within the time allotted to type the Juvenile manual, and that her

4   "reputation" was therefore diminished.  Thus, Pascale cannot show that the assignment

5   had any detrimental effect on her employment.

6        As for the appointment of Steppler to assume the duties of acting supervisor, the

7   court previously found in the Grigsby order that the Steppler appointment did not qualify as

8   an adverse action, as it did not result in any promotion or promotional opportunities for

9   Steppler, and was not accompanied by any increase in benefits or pay (and conversely, did

10   not result in any demotion or decrease in pay for any of the other employees).  Moreover,

11   Pascale testified in her deposition that she was not interested in being picked for this

12   assignment over Steppler.

13        Pascale's suggestion that she herself was denied promotional opportunities as a

14   result of the appointment of Steppler to the 5-day temporary assignment is belied by her

15   testimony that she has never been denied training that she requested, and that she has

16   never been denied a promotion for which she applied.  In addition, Pascale admitted in her

17   deposition that she was not interested in serving as acting supervisor, and did not claim

18   that she was more qualified than Steppler to perform the necessary duties. While she

19   claimed that Melendy discriminated against her by making the comment that no one else

20   was "suitable" for the temporary assignment, she also admitted in her deposition that she

21   herself was not "suitable," as she had not worked as a floater or legal specialist, and did not

22   have the "CLETS" knowledge necessary to serve as acting supervisor.

23        With regard to whether "denial of union representation" or "violation of union

24   representation rights" constituted an adverse action, Pascale cannot show that any

25   resulting demotion, loss of pay or promotion, or significant alteration of her job duties.  In

26   fact, it is undisputed that  Pascale was represented by her union representative in

27   negotiating her work plan, and throughout her grievances in 2007 and 2008.  Pascale

28   claims that the County refused to allow union participation in a meeting with "County

United States District Court

For the Northern District of California

1  attorneys" a few weeks after she complained about the March 27 meeting.  However, she

2  has provided no competent evidence that this meeting was with "County attorneys."

3      The evidence shows that the Department asked Pascale and staff employees to

4  participate in meetings with outside facilitators for "team building" as a way to smooth

5  relations with the Department – but that she refused to participate.  Pascale has failed to

6  show how the County's request that she participate in "team building" and her refusal to do

7  so without union representation altered the terms and conditions of her employment or

8  prevented her from making any further complaints about work conditions – particularly

9  given the evidence showing that she continued to pursue grievances throughout 2007 and

10  2008.

11      The claims that Melendy kicked Pascale out of her office, and that Melendy asked

12  Pascale to stop socializing with another co-worker during work time and told her that she

13  noticed her switching her computer screen, are at most minor transgressions that cannot

14  be considered adverse actions, because there was no resulting change in employment

15  status.  Similarly, Melendy's offer of worker's compensation forms cannot qualify as an

16  adverse action in a discrimination suit, particularly in view of the fact that Pascale indicated

17  in her deposition that Melendy's inquiry regarding worker's compensation was not

18  offensive.

19      Regarding Pascale's claim about the alleged refusal to investigate her internal

20  complaints of discrimination, and the alleged "hostile environment," the court previously

21  ruled in the Grigsby order that neither a hostile work environment nor a failure to investigate

22  qualified as a viable adverse action.  As for Pascale's claim that she was excluded from

23  Adult Division meetings, the evidence shows that the exclusion from such meetings did not

24  just apply to "older workers," but to the entire Administrative Unit.

25      The fourth element of the prima facie case is that the plaintiff must show either that

26  she was treated less favorably than similarly situated employees who were not in the

27  protected class (here, younger employees) or that some "other evidence" supports an

28  inference of discrimination.  Pascale asserts that several younger employees received

United States District Court

For the Northern District of California

more favorable treatment than she did.  She claims that Steppler was not only appointed acting supervisor after only two and a half months of service, but she was also "routinely" treated with more kindness and respect by Melendy.  By contrast, she asserts, Melendy constantly "screamed" at Pascale "with an angry face," and slammed doors in her face. She also asserts that Melendy invited the younger workers into her office for "training and one-on-one assistance," and always maintained "a jovial attitude and demeanor" towards them.

The court finds however, that no admissible evidence shows a link to any claimed discriminatory conduct.  Other than making vague assertions that Melendy treated the younger employees "with dignity and respect" and invited them into her office (on occasions when Pascale herself was not present) Pascale provides no evidence showing that similarly-situated individuals outside the protected class were treated more favorably than she was, and shows no other circumstances surrounding the alleged adverse actions that would give rise to an inference of discrimination.  Her claim that Melendy treated the younger workers in a more friendly manner than she treated Pascale, and invited them into her office is without evidentiary value, as Pascale has no idea what they discussed in Melendy's office, does not know whether those employees were ever tardy or absent, and provides no information other than her own unfounded speculation.

Pascale also speculates that Melendy never imposed a work plan to similarly situated younger employees, but she also admitted in her deposition that she had no knowledge regarding whether those younger employees had ever been absent or tardy.  In addition, she testified that those younger employees were not regular-hire employees with the same privileges and benefits she had, and that she had no knowledge of the hours they worked.

Accordingly, the court finds that Pascale cannot establish a prima facie case because she has no evidence that she was subjected to any adverse employment action, as defined by the cases cited above, and has no other evidence tending to create an inference of discrimination.  Thus, Pascale has failed to establish any inference of

United States District Court

For the Northern District of California

1   discrimination that could arguably be linked to the purported adverse actions.

2       In addition, to the extent that the warning letter and work plan could, for the sake of

3   argument, be considered adverse actions, defendants have articulated a legitimate, non-

4   discriminatory reason for the County's actions – Pascale admitted that she was

5   insubordinate, tardy, and absent.  In her opposition, Pascale argues that the County's

6   proffered reasons for its action are mere pretext, asserting that the argument that the acting

7   supervisor position required a knowledge of the "CLETS" system is simply a "litigation-

8   generated defense" that "found its way into the record" only after plaintiffs filed this action.

9   She contends that at no point during the March 27 meeting did anyone advise her that the

10  acting supervisor position required knowledge of the CLETS system, or that that was the

11  reason that Steppler was selected.

12      With regard to defendants' assertion that she was issued the work plan because of

13  her excessive absenteeism, Pascale responds that she did not testify in her deposition that

14  her sick leave in November and December 2006 were unauthorized.  She claims that she

15  stated in both her deposition and in her declaration that there is no unauthorized

16  absenteeism, and that her sick leave had been approved when she took it.  She claims that

17  it was only several weeks later that Melendy decided that the sick leave was not

18  authorized, and at that point placed her on the work plan "under the daily threat of

19  termination" for three months.

20      The court finds, however, that Pascale has failed to provide any specific evidence of

21  pretext to rebut defendants' articulated non-discriminatory reason.  In particular, she has

22  provided no evidence showing that defendants' proffered explanation is unworthy of

23  credence because it is internally inconsistent or otherwise not believable, or showing that

24  unlawful discrimination likely motivated the County.  Regardless of Pascale's quibbles with

25  the warning letter and the work plan, she admitted in her deposition that she was

26  insubordinate, and that she was tardy and absent during the period in question, and has

27  provided no evidence sufficient to raise a triable issue as to whether unlawful discrimination

28  likely motivated the County to issue the warning letter and the work plan.

United States District Court

For the Northern District of California

1    As for Pascale's assertion that she can show pretext because Melendy did not

2    mention knowledge of "CLETS" as a requirement for serving as acting supervisor, Pascale

3    has failed to set forth any evidence that she asked about "CLETS" at the meeting, or any

4    evidence refuting defendants' assertion that knowledge of "CLETS" was useful for

5    performing acting supervisor duties.

6         2.    Association discrimination

7    Defendants argue that summary judgment must be granted as to the second cause

8    of action for association discrimination because Pascale has no viable claim for age-based

9    discrimination.  In addition, defendants note that Pascale herself admitted in her deposition

10    that she did not know whether defendants had treated her unfairly because she associated

11    herself with older people.

12    In the complaint, plaintiffs allege that defendants violated FEHA, the ADEA, and Title

13    VII when they discriminated against plaintiffs in the terms, conditions, or privileges of

14    employment on the basis that plaintiffs associated with other employees over the age of 40.

15    FEHA provides that discrimination based on one of the protected characteristics includes a

16    perception that the person has any of those characteristics or that the person is associated

17    with a person who has, or is perceived to have any of those characteristics.  Cal. Gov't

18    Code § 12926(m).

19    Thus, FEHA expressly provides a cause of action for unlawful discrimination based

20    on an association with someone in a protected class.  However, it is not entirely clear what

21    type of conduct constitutes an "association."  Nor is it clear on what basis a plaintiff may

22    bring a claim of discrimination based on association under the ADEA or Title VII.

23    In the context of the present case, defendants assert that Pascale must establish

24    that she suffered an adverse action as a result of her association with people over 40.  See

25    Setencich v. American Red Cross, 2008 WL 449862 at *6-7 (N.D. Cal., Feb. 15, 2008).

26    Defendants contend that because Pascale cannot show any adverse action or any link to

27    discrimination based on age, her claim for association discrimination also fails.

28    In opposition, Pascale asserts that she has presented sufficient evidence to support

22

United States District Court

For the Northern District of California

1   the claim of discrimination based on association with a group of older workers.  She

2   contends that she and at least one other older co-worker were collectively referred to as

3   part of "the gang of ten," and that she herself was referred to as one of the "ringleaders."

4   She asserts that Melendy's actions were not addressed only to her, but also to the group of

5   older employees who made complaints to the EEO office and the Board of Supervisors,

6   and argues that there is sufficient evidence to show that many of those actions were

7   "targeted to the 'gang of ten' as a group."

8        The court finds that the motion must be GRANTED.  Pascale provides no evidence

9   that defendants referred to her or any other employee as belonging to the "gang of ten."

10  More importantly, she provides no evidence of an adverse action or any link to

11  discrimination based on her association with people over the age of 40.

12       3.   Retaliation

13       Defendants argue that summary judgment should be granted as to the third cause of

14  action for retaliation because Pascale cannot make out a prima facie case.  In particular,

15  defendants assert that Pascale fails to establish that she was subjected to an adverse

16  employment action, and fails to show any link between any such employment action and

17  any protected activity.

18       The ADEA not only protects against discrimination, but also specifically protects

19  against retaliation.  29 U.S.C. § 626(d).  Title VII and FEHA also prohibit retaliation.

20  Retaliation claims under the ADEA are analyzed in the same way as Title VII retaliation

21  claims.  Wallis v. J.R. Simplot Co., 26 F.3d 885, 888 (9th Cir. 1994) (burdens of proof and

22  persuasion are the same under Title VII and the ADEA); see Whitman v. Mineta, 541 F.3d

23  929, 932 (9th Cir. 2008) (age-related retaliation claims are analyzed under McDonnell

24  Douglas framework).

25       To establish a prima facie case of retaliation, Pascale must show that she engaged

26  in a protected activity, that the County subjected her to an adverse action, and that there

27  was a causal link between the protected activity and the County's action.  See Bergene v.

28  Salt River Proj. Agr. Imp. and Power Dist., 272 F.3d 1136, 1140-41 (9th Cir. 2001); see

United States District Court

For the Northern District of California

1   also Yanowitz, 36 Cal. 4th at 1042 (same standard under FEHA).  Here, defendants assert

2   that Pascale cannot meet the second and third elements of the prima facie case.

3        Title VII and FEHA differ somewhat with regard to what constitutes an adverse

4   employment action in a retaliation claim.  Under Title VII, the anti-retaliation provision is not

5   limited to actions that affect the terms and conditions of employment.  Burlington Northern

6   and Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2008).  An adverse action is also defined

7   as one that might have "dissuaded a reasonable worker from making or supporting a

8   charge of discrimination."  Id. at 68 (quotations and citations omitted); see also Ray v.

9   Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000) (adverse employment action for purposes

10  of Title VII retaliation claim is action "reasonably likely to deter employees from engaging in

11  protected activity").

12       However, Title VII "does not set forth a general civility code for the American

13  workplace," and "[a]n employee's decision to report discriminatory behavior cannot

14  immunize that employee from those petty slights or minor annoyances that often take place

15  at work, and that all employees experience," which include "personality conflicts . . . that

16  generate antipathy," "snubbing by supervisors and co-workers," and "simple lack of good

17  manners."  White, 548 U.S. at 68 (quotations and citations omitted).

18       Under FEHA, an adverse action for purposes of a retaliation claim is an action that

19  "materially affects the terms, conditions, or privileges of employment, rather than simply

20  that the employee has been subjected to an adverse action or treatment that reasonably

21  would deter an employee from engaging in the protected activity."  Yanowitz, 36 Cal. 4th at

22  1051 & n. 10.  As with claims under Title VII, minor or relatively trivial adverse actions are

23  not actionable.  Id. at 1050-52.

24       If Pascale is successful in establishing a prima facie case, the burden shifts to the

25  defendants to present a legitimate business rationale for their actions.  Pascale may still

26  prevail if she is able to establish the existence of triable issues as to whether the

27  defendants' proffered explanation is a pretext for retaliation.  Stegall v. Citadel Broad. Co.,

28  350 F.3d 1061, 1066 (9th Cir. 2003).

United States District Court

For the Northern District of California

Here, Pascale's protected activity was her internal complaint of age discrimination immediately following the March 27, 2007 meeting.  Pascale contends that this was the first complaint she had made regarding age discrimination.  The internal complaint was followed by a complaint made by Pascale and Maria Cozzi to the County's EEO Department in April 2007.  However, defendants note, Pascale testified in her deposition that she perceived no difference between the way Melendy treated her prior to the complaint, and the way she was treated afterwards, as her interactions with Melendy were generally aggressive or hostile, starting at the time of the June 2006 incident involving Melendy's complaint about Hodges.

In her deposition, Pascale was unable to identify any retaliatory act by Zamudio – other than the fact that he "supported" Melendy, and refused to overrule her decision to appoint Steppler to the temporary supervisor's position – and was also unable to identify any specific act by Melendy that can be reasonably viewed as retaliatory.  Pascale repeated that Melendy was "abusive" and "demanding," that she "would slam her door," that she "wasn't speaking to us," and that she "created a hostile environment, not just for us, but for the entire Department."  Pascale referred generally to the Department as "a hostile, terrible work environment," although she also conceded that Melendy was not abusive in each and every interaction between them.

Apart from this general testimony, Pascale was able to recall only a few specific instances of what she considered unfavorable treatment by Melendy following the March/April 2007 complaints – an e-mail request that Pascale focus on her work, rather than socializing with another employee; and a comment by Melendy that every time she walked by Pascale, it appeared that Pascale was changing her computer screen.  In her responses to interrogatories, Pascale also listed as retaliatory behavior Melendy's question as to whether Pascale needed a worker's comp form after she had complained about wrist pain; and the Department's decision to not include the Administrative Unit in Adult Division meetings.  Defendants assert that these are all either minor incidents, or incidents that apply to the entire Unit.

United States District Court

For the Northern District of California

1    Finally, defendants assert, even if Pascale could somehow establish that any of

2 these incidents is sufficient to constitute an adverse action that was taken in retaliation for

3 her complaints about the March 27, 2007 meeting, she has no evidence linking the alleged

4 adverse actions to her complaints, and nothing to show that Melendy's comments were

5 anything other than routine statements made to an employee in the workplace.

6    In opposition, Pascale argues that after she made the complaints regarding the

7 March 27, 2007 meeting, she was "denied union representation," was "excluded from

8 meetings," "had her workload increased without the promise of support," and "was

9 subjected to a hostile work environment."  In addition, she contends, the County refused to

10 investigate her internal complaint to the EEO office, in violation of the County's own

11 regulation.  She argues that these actions were sufficient to deter "an employee" from

12 making any complaints in the future.

13    The court finds that the motion must be GRANTED.  Pascale has failed to provide

14 evidence sufficient to establish a prima facie case, as she has not shown that she was the

15 recipient of any adverse employment action that resulted from engaging in protected

16 activity.  In particular, she has not shown any unfavorable treatment following her April

17 2007 internal complaint of discrimination that could amount to a negative employment

18 action.

19    To the extent that the claim of denial of "union representation" refers to Pascale's

20 decision not to participate in the "team building interview" with a facilitator because her

21 union representative was not invited, it is clear that this did not deter her from making other

22 complaints, since she continued to pursue her grievances and to denounce Melendy to the

23 Board of Supervisors.  Moreover, an office-wide "team-building" exercise with a facilitator is

24 not the type of event at which an employee could legitimately expect to have union

25 representation.

26    To the extent that the claim that Pascale was "excluded from meetings" refers to the

27 exclusion of the Administrative Unit from Adult Probation meetings, the evidence shows

28 that the exclusion applied to all employees in the Administrative Unit, including the younger

United States District Court

For the Northern District of California

1    employees.  Thus, it cannot be considered an adverse action that was directed at Pascale

2    on account of her age.

3         To the extent that the claim that Pascale's work load increased is intended to refer to

4    the fact that she was assigned to type a 44-page manual for Adult Probation, the evidence

5    shows that this incident occurred prior to the March 27, 2007 meeting.  Indeed, a month

6    prior to that meeting, Melendy sent Zamudio and another individual an e-mail stating what a

7    "super job" Pascale was doing on researching and coordinating the Juvenile Manual, and

8    that Pascale had turned in more than double the volume of the Adult Manual than Melendy

9    had asked her to review; and adding that she had communicated with Pascale to tell her

10   how impressed she was with her work.

11        Pascale's claim in her opposition that Melendy retaliated against her by creating a

12   "hostile work environment" is belied by her own deposition testimony, where she claims to

13   have perceived no difference in the treatment she received from Melendy before March 27,

14   2007, and the treatment she received afterwards.  As noted below in the section discussing

15   the harassment claim, Pascale asserted that Melendy was uniformly aggressive and

16   hostile.  Cold or hostile behavior in itself is insufficient to constitute an adverse action for

17   purposes of a retaliation claim.  See Manatt v. Bank of America, N.A., 339 F.3d 792, 803

18   (9th Cir. 2003).

19        Furthermore, the evidence suggests that following Pascale's complaints, Zamudio

20   and Melendy responded by taking a "hands off" approach, as (according to Zamudio's

21   deposition testimony) any attempt to supervise Pascale was met with vocal, nasty

22   resistance.   Pascale herself testified in her deposition that she was unable to identify any

23   specific retaliatory act committed by Zamudio, and also testified that Melendy treated her

24   the same both before the March 27, 2007 meeting and after she had made her internal

25   complaints of age discrimination.

26        Finally, Pascale has not provided any authority to support the claim that the County's

27   "refusal" to investigate the internal complaint constituted an adverse employment action.  In

28   general, the failure to conduct an adequate investigation after an alleged act of

United States District Court

For the Northern District of California

1   discrimination cannot be considered an action that "materially affects the terms, conditions,

2   or privileges of employment" under FEHA, and cannot be considered an action that

3   reasonably would deter an employee from engaging in the protected activity under Title VII.

4   Finley v. County of Marin, 2009 WL 5062326 at *15 (N.D. Cal., Dec. 23, 2009); see also

5   Taylor v. AFS Techs., Inc., 2011 WL 1237609 at *4 n.3 (D. Ariz., Apr. 4, 2011)

6   (micromanagement, ostracism by co-workers, and failure to investigate do not constitute

7   materially adverse actions sufficient to support Title VII retaliation claim).

8         As for the alleged adverse actions cited by Pascale in her opposition to defendants'

9   motion, the court finds that defendants have adequately shown that the actions are not as

10   represented by Pascale, that they are contradicted by Pascale's deposition testimony, or

11   that they do not qualify as adverse actions under the statutes.  Moreover, the evidence

12   shows that Pascale joined with other employees in filing union grievances against

13   defendants after she claims that defendants rejected her initial complaints on April 11,

14   2007.  Those grievances continued into the fall of 2007.  Thus, Pascale cannot establish

15   that she was deterred from filing further complaints.

16         4.    Harassment

17         Defendants argue that summary judgment should be granted as to the fourth cause

18   of action for harassment because Pascale has no evidence establishing a severe or

19   pervasively hostile workplace, or that any conduct by any of the defendants was linked to

20   her age.  They assert further that Pascale cannot establish a prima facie case of

21   harassment.

22         To prevail on an age-based hostile workplace/harassment claim, Pascale must show

23   that she was subjected to verbal or physical conduct of an age-related nature, that the

24   conduct was unwelcome, and that the conduct was sufficiently severe or pervasive to alter

25   the conditions of her employment and create an abusive work environment.  Vasquez v.

26   County of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003) (Title VII).  California courts apply

27   the same standard in FEHA cases, and seek guidance from Title VII decisions.  See Lyle v.

28   Warner Bros. Television Prods., 38 Cal. 4th 264, 279 (2006); Reno v. Baird, 18 Cal. 4th

United States District Court

For the Northern District of California

640, 646-47 (1998).  Pascale must show that the work environment was both subjectively and objectively hostile – that is, she must show that she perceived her work environment to be hostile, and that a reasonable person in her position would have perceived it to be so. Nichols v. Azteca Res. Enters., Inc., 256 F.3d 864, 871-72 (9th Cir. 2001).

A determination of whether conduct qualifies as hostile under this standard includes its frequency, severity, and nature, including whether it is physically threatening or humiliating as opposed to merely verbally offensive.  Galdamez v. Potter, 415 F.3d 1015, 1023 (9th Cir. 2005).  Most importantly, Title VII and FEHA do not proscribe a general civility code in the workplace.  Manatt, 339 F.3d at 798; see also Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998); Lyle, 38 Cal. 4th at 295.  Rather, the alleged hostile conduct must be based on the plaintiff's protected status.  Nichols, 256 F.3d at 872.

Here, the record is clear that Pascale had a strained relationship with Melendy, and that she frequently disagreed with Melendy's decisions and challenged them.  However, while Pascale frequently stated in her deposition that Melendy created a "hostile work environment," she could not recall any specifics, except to say that Melendy was rude, demanding, and hostile, and that she communicated in a negative manner with the "entire department."  Pascale has pointed to no incidents that establish any sort of "severe and pervasive" conduct, and has also not identified any evidence indicating age discrimination. In short, none of the conduct at issue concerns any comments, statements, or slurs referencing Pascale's age.

In her opposition to defendants' motion, Pascale contends that she can show triable issues of fact with regard to the cause of action for workplace harassment.  She contends that the offensive conduct need not be "age-specific" in order to support a claim for workplace harassment.  She asserts that the critical question is whether the older workers are provided with disadvantageous terms and conditions of employment while the younger workers are not.

Pascale contends that the evidence shows that Melendy engaged in a "pattern of harassment" towards the older workers, but treated the younger workers with "dignity and

United States District Court

For the Northern District of California

1    respect."  The "harassment" cited by Pascale includes incidents in which she claims

2    Melendy screamed, slammed doors, and made "threatening gestures" such as "jumping out

3    of her chair toward [Pascale] while screaming at her to get out of her office," and "other

4    negative interactions."  Pascale also asserts that the evidence shows that Melendy placed

5    her on an improvement plan, took away her scheduled RDO and authorized sick leave,

6    altered her work schedule, increased her work load without the promised support,

7    monitored her in the workplace, told her she was "unsuitable" for advancement, and took

8    away the long standing practice of permitting employees to use vacation days for sick time.

9        Pascale claims that the County does not dispute that the workplace was

10   "permeated" with "daily harassment," noting that Zamudio testified in his deposition that

11   there was ongoing "harassment" in the workplace between the plaintiffs in this action, and

12   Melendy, which included negative comments, personal attacks, and anger – although he

13   put the blame on the plaintiffs.  Plaintiff contends that the daily interactions became so

14   negative that Zamudio and Melendy simply "stopped supervising" plaintiffs.

15       The court finds that the motion must be GRANTED.  Pascale has not provided

16   evidence sufficient to raise a triable issue as to whether she was subjected to verbal or

17   physical conduct of an age-related nature, or that the conduct was sufficiently severe or

18   pervasive to alter the conditions of her employment and create an abusive work

19   environment.

20       Pascale appears to be attempting to establish harassment on the basis of age by

21   means of comparative evidence showing how an alleged harasser treats members of the

22   protected class and individuals outside the protected class.  However, the cases cited in

23   Pascale's opposition all involve sexual harassment, and she does not cite a single case of

24   age-based harassment.

25       The case on which Pascale primarily relies – E.E.O.C. v. National Education Ass'n,

26   Alaska, 422 F.3d 840 (9th Cir. 2005) – is readily distinguishable.  In that case, the female

27   employees experienced verbal abuse ("shouting, screaming, and foul language") from the

28   male supervisor.  The supervisor also lunged at the female employees, shook and

**United States District Court**
For the Northern District of California

1   pummeled this fists at them, stalked them, grabbed them by their shoulders, and made

2   other physically threatening gestures that were confirmed through the testimony of both

3   male and female employees, and were also documented in police reports. Id., 422 F.3d at

4   843-45.  The Ninth Circuit found that the supervisor's behavior, while not on its face sex- or

5   gender-related, nonetheless met the "severe and pervasive" test for the case to survive

6   summary judgment, because there was substantial "direct comparative evidence about how

7   the alleged harrasser treated members of both sexes." Id. at 844-47.

8          In the present case, by contrast, Pascale has no comparable evidence of physical

9   intimidation.  She claims in her declaration that on one occasion, Melendy followed her to

10  another employee's work station, and "confronted me, leaned towards me in an angry

11  manner, and falsely accused me of 'socializing' with Ms. Turner [the other employee]."

12  However, she testified in her deposition that the exchange with Melendy regarding

13  socializing with Turner did not occur in person, but via e-mail.

14         In her declaration, Pascale claims generally that Melendy spoke to her "in a raised

15  and condescending voice," "lean[ed] at [her] in an aggressive manner when speaking," and

16  made "angry faces and gestures" towards her.  She referred to Melendy's gestures as the

17  "face of hatred," and asserted that "[o]n a daily basis, Melendy would continue to belittle,

18  demean, grimace, make angry faces, speak in a mocking and angry tone, and look for any

19  way to make my life miserable."

20         In E.E.O.C. v. National Educational Association, however, the Ninth Circuit cited to

21  testimony from several males in the same position as the harassed female employees,

22  including one who testified that "aggressiveness with male employees was different from

23  that experienced by female employees." Id. at 846.  Moreover, the court reviewed

24  evidence from a wide range of employees, before finding that the comparative evidence

25  demonstrated a pattern of harassment sufficiently severe to satisfy the standard. Id. at

26  847.

27         Here, Pascale has submitted no comparative deposition testimony or declarations of

28  younger workers; no evidence of the ages of the alleged "favored" employees; no evidence

31

United States District Court

For the Northern District of California

1   of how younger employees were treated if they were habitually late or were insubordinate;

2   no evidence indicating whether younger employees were ever issued work plans, or had

3   sick leave or vacation time, or were eligible for union representation, or even had regular

4   jobs with the County (as opposed to being temporary or extra hires); and no evidence as to

5   whether the younger employees felt the same about Melendy as Pascale did.

6       The only evidence comes from Pascale herself, who states in her declaration that

7   Melendy treated the younger employees "with dignity and respect in the workplace."

8   However, even Pascale's fellow employee, Grigsby, admitted in her deposition that she

9   generally did not perceive any difficulties working with Melendy, and that Melendy did not

10  treat her unfavorably.

11      Pascale also attaches, to a request for judicial notice, declarations by plaintiff Maria

12  Teresa Cozzi, and former plaintiffs Martha Grigsby, Beverly Hodges, Yun Bin Hsu, Joan

13  Monteverdi, Monica Patenaude, and Margaret Turner, which were previously filed in

14  opposition to defendants' motion for summary judgment as to the claims asserted by

15  Grigsby.

16      Each of these seven declarants states, in general but identical language, that after

17  plaintiffs made their internal complaints of discrimination, "Melendy's angry and

18  inappropriate conduct toward us intensified" and that "[o]n a daily basis, Melendy could

19  harass, belittle, demean, grimace, make angry faces, speak in a mocking and angry tone,

20  and look for any possible way to make our lives miserable in the workplace."

21      Notwithstanding these claims, the only younger employee that these declarants

22  point to as having been given favorable treatment was Steppler, and the focus of their

23  complaints is that Steppler was given the 5-day acting supervisor position as announced at

24  the March 27, 2007 meeting.  None of the declarants provides any evidence that younger

25  employees in general received more favorable treatment in the Department than older

26  employees did.

27      Finally, with regard to Pascale's citation to Zamudio's deposition testimony – in

28  which he described the hostile work environment – this testimony in fact proves the

32

United States District Court

For the Northern District of California

1  opposition of Pascale's point.  What Zamudio testified to was his perception that Pascale

2  was part of a group of employees who were so negative they effectively ended Melendy's

3  ability to supervise the employees, and that he and Melendy became fearful of coming into

4  work every day.  Melendy also testified to the same effect.

5      Pascale has failed to provide any evidence of age-based conduct or language that

6  was so pervasive that it altered the conditions of her employment.  The "severe or

7  pervasive" standard excludes occasional, sporadic, isolated, or trivial incidents of verbal

8  abuse.  See Etter v. Veriflo Corp., 67 Cal.App. 4th 457, modified, 68 Cal. App. 4th 130

9  (1998).  Moreover, mere "[o]stracism . . . does not amount to a hostile environment."

10 Fisher v. San Pedro Peninsula Hosp., 214 Cal. App. 3d 590, 615 (1989); see also Strother

11 v. Southern California Permanente Med. Group, 79 F.3d 859, 869 (9th Cir. 1996).

12     None of the comments allegedly made by Melendy rise to the level of comments that

13 "alter the conditions of employment" or that "create an abusive work environment."  See

14 Manatt, 339 F.3d at 798-99 (law prohibiting discrimination is not a "general civility code");

15 see also Vasquez, 349 F.3d at 642-43 (no hostile environment discrimination where

16 employee was told that he had a "typical Hispanic macho attitude" and that he should

17 transfer to the field because "Hispanics do good in the field," and where he was yelled at in

18 front of others); Kortan, 217 F.3d at 1110 (no hostile environment where employee's

19 supervisor referred to a former female superintendent as a "castrating bitch," and a

20 "Madonna," and referred to the plaintiff herself as "Medea;" comments were offensive, but

21 did not affect conditions of employment to sufficiently significant degree necessary for

22 violation of Title VII) .

23     In short, there is no evidence that Pascale was targeted because of her age, or –

24 apart from Pascale's unsupported assertion that Melendy "treated the younger workers with

25 dignity and respect," but was rude and "aggressive" toward older workers – is there any

26 evidence that hostile treatment was directed at Pascale or at older workers generally.

27 Indeed, Grigsby, who was one of those "older" workers, testified that she did not perceive

28 any difficulties in working for Melendy.

United States District Court

For the Northern District of California

1    5.    Failure to Prevent Harassment and Discrimination

2    Defendants argue that summary judgment must be granted as to the fifth cause of

3    action for failure to prevent discrimination and harassment because Pascale cannot

4    establish a viable claim of discrimination or harassment.

5    FEHA imposes an affirmative duty on employers to take all reasonable steps to

6    prevent discrimination and harassment from occurring.  Cal. Gov't Code § 12940(j)(1).

7    However, no suit may be maintained for violation of this affirmative duty if the plaintiff has

8    not actually suffered any employment discrimination or harassment.  Trujillo v. North

9    County Transit Dist., 63 Cal. App. 4th 280, 288-89 (1998).

10    The court finds that the motion must be GRANTED, as Pascale has established no

11    viable claim of discrimination or harassment, and does not oppose this part of the motion.

12    6.    First Amendment Claim

13    In the complaint, plaintiffs allege that they requested the assistance of the members

14    of the Marin County Board of Supervisors in ending the allegedly discriminatory conduct

15    against the older workers.  Plaintiffs claim that as a result of this action, they were

16    subjected to repeated acts of retaliation that were designed to force them out of the

17    workplace, in violation of their rights under the First Amendment to the United States

18    Constitution.

19    A claim under 42 U.S.C. § 1983 against a government employer for First

20    Amendment retaliation requires that an employee demonstrate that she engaged in

21    protected speech – that is, speech that addresses "a matter of legitimate public concern,"

22    that the employer took adverse employment action, and that her speech was a substantial

23    or motivating factor for the adverse employment action.  Coszalter v. City of Salem, 320

24    F.3d 968, 973 (9th Cir. 2003).  In addition, the employee must show that her interests in

25    commenting on the matter of public concern outweigh the County's interests in maintaining

26    public services.  Sanchez v. City of Santa Ana, 936 F.2d 1027, 1038 (9th Cir. 1990).

27    Defendants argue that summary judgment must be granted as to the First

28    Amendment claim because claims under § 1983 and § 1985 cannot be brought on the

34

United States District Court

For the Northern District of California

1  basis of age-related animus; and that the claim against the County fails because Pascale

2  has failed to identify a "policy or practice."  In addition, defendants assert that Pascale has

3  no admissible evidence to support her claim, and cannot meet her burden of overcoming

4  the partial immunity granted to the County.  Defendants also contend that the § 1985 claim

5  is deficient because defendants cannot conspire with themselves, and because Pascale

6  has no evidence demonstrating a conspiracy.

7      In opposition, Pascale asserts that a complaint of workplace discrimination is a

8  matter of public concern, and that she has therefore established a violation of her First

9  Amendment rights.

10      Plaintiffs allege in the complaint that defendants violated § 1983 and § 1985 by

11  discriminating and retaliating against them because of their age.  Pascale testified in her

12  deposition that the complaint was directed at her situation "towards HR," and its inability to

13  resolve her complaints of discrimination.  Pascale also appears to be basing this claim on

14  her prior complaints about the March 27, 2007 meeting.  The act of protesting the

15  appointment of Steppler to the 5-day "temporary supervisor" position cannot be viewed as a

16  statement involving a matter of public concern, as it occurred within Pascale's job

17  environment and also (allegedly) pertained to her and her co-workers.

18      Nor does Pascale point to a negative employment action that resulted from her

19  allegedly constitutionally protected speech.  In her deposition, Pascale testified that she

20  could recall only that after she complained, Melendy made two comments – one in which

21  she asked Pascale to focus on her work, and not bother another employee; and the

22  second, in which she commented to Pascale that every time she (Melendy) walked by

23  Pascale's desk, Pascale appeared to be switching her computer screen.

24      As noted above, courts have repeatedly held that only non-trivial employment

25  actions that would deter reasonable employees from complaining about discrimination are

26  actionable, and that mere inconveniences, verbal disagreements, and failures to advise of

27  meetings do not amount to adverse employment actions.  Here, there is no evidence that

28  Pascale was in any way deterred from complaining about Melendy.  In fact, the evidence

**United States District Court**
For the Northern District of California

1   shows that throughout the time that Melendy was Pascale's supervisor, Pascale pursued

2   grievances against Melendy as a matter of course.  And, according to Zamudio, as

3   Melendy became more quiet in her interactions and supervision involving Pascale,

4   Pascale's expression moved to the forum of public meetings before the Board of

5   Supervisors, where she publicly denounced Melendy.

6         The court finds that the motion must be GRANTED.  First, it seems apparent – both

7   from the complaint, and from Pascale's response to defendants' motion – that the First

8   Amendment claim is based on a theory that defendants retaliated against her for

9   complaining about age discrimination.  The ADEA specifically prohibits both discrimination

10  and retaliation.  See 29 U.S.C. § 623(a), (d).  Section § 1983 claims are not actionable

11  where Congress has evinced an intent to preclude such claims through other legislation.

12  Ahlmeyer v. Nevada Sys. of Higher Educ., 555 F.3d 1051, 1055 (9th Cir. 2009).  Thus, a

13  § 1983 claim based on age discrimination is prohibited, because Congress intended the

14  ADEA to provide the exclusive means of pursuing federal claims of age discrimination in

15  employment.  Id. at 1056-58.  For this reason, Pascale's First Amendment claim is barred.

16        As the U.S. Supreme Court noted in a recent decision, "[u]nderlying our cases has

17  been the premise that while the First Amendment invests public employees with certain

18  rights, it does not empower them to 'constitutionalize the employee grievance.'"  Garcetti v.

19  Ceballos, 547 U.S. 410, 420 (2006) (citation omitted).  It appears that this is exactly what

20  Pascale is attempting to do here.

21        Moreover, Pascale has not established that she made (or was precluded from

22  making) any statements on matters of "public interest."  Pascale complained about

23  Melendy's decision to assign acting-supervisor's duties to Steppler for a five-day period,

24  and she also signed on to union grievances regarding retaliation for union activity and the

25  March 27, 2007 meeting.  These are plainly matters related to personnel decisions, not

26  matters of public interest.

27        When an employee speaks on a matter of personal interest (such as a personnel

28  decision), she is not speaking as a citizen for First Amendment purposes.  See Desrochers

United States District Court

For the Northern District of California

v. City of San Bernardino, 572 F.3d 703, 710 (9th Cir. 2009).  To address a matter of public concern, the content of the speech must involve "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir. 1983) (quotation and citation omitted).

On the other hand, speech that deals with "individual personnel disputes and grievances" and that would be of "no relevance to the public's evaluation of the performance of governmental agencies" is generally not of "public concern." Desrochers, 572 F.3d at 710 (citing Coszalter, 320 F.3d at 973).  "The same is true of speech that relates to internal power struggles within the workplace, and speech which is of no interest beyond the employee's bureaucratic niche. Id. (quotation and citation omitted).

Finally, as with the age-discrimination claim and the retaliation claim, Pascale has provided no evidence that she suffered any adverse employment action.  Indeed, she testified in her deposition that she was not treated unfavorably (other than the  "negative" performance evaluation, which the court has already determined did not rise to the level of an adverse action).

**CONCLUSION**

In accordance with the foregoing, the court GRANTS defendants' motion for summary judgment as to the claims asserted by plaintiff MaryBeth Pascale.

**IT IS SO ORDERED.**

Dated:  April 18, 2011

_____
PHYLLIS J. HAMILTON
United States District Judge